509 So.2d 1081 (1987)
Kirk Allen HANSBROUGH, Appellant,
v.
STATE of Florida, Appellee.
No. 67463.
Supreme Court of Florida.
June 18, 1987.
Rehearing Denied August 12, 1987.
*1083 Chandler R. Muller and Warren W. Lindsey of Muller, Kirkconnell and Lindsey, P.A., Winter Park, for appellant.
Robert A. Butterworth, Atty. Gen., and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Hansbrough appeals his conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm his conviction. Because we find that he should not have been sentenced to death, however, we vacate Hansbrough's death sentence and remand to the trial court to impose a term of life imprisonment with no possibility of parole for twenty-five years.
On June 20, 1984 a customer entered an insurance agency's office and found the agency's employee dead. The victim had been stabbed over thirty times, and money was missing from the office. An Orlando policeman stopped Hansbrough on July 17, 1984 for traffic infractions and, after checking, arrested him for driving with a suspended license. While in custody Hansbrough stated that he had been at the scene of the homicide on the day the crime occurred. The police arrested him for this murder on July 23, 1984. After trial, the jury convicted Hansbrough of first-degree felony murder and armed robbery and recommended that he be sentenced to life imprisonment. The trial court overrode that recommendation, however, finding that four aggravating circumstances outweighed the evidence of a nonstatutory mitigating circumstance.
Sometime prior to his arrest on July 17, the police received a tip that Hansbrough had been involved in the instant homicide. After receiving that tip, a tactical intelligence unit started watching Hansbrough, and two members of that unit gave the arresting officer information about Hansbrough after he had been stopped for the traffic infractions. After being arrested for driving with a license suspended for driving under the influence, Hansbrough gave the police permission to take his shoes and the names of people he had been with on the day of the murder; he was then released on his own recognizance. The police had the shoes tested for blood and, after further investigation, arrested Hansbrough for murder. Hansbrough refused to give a statement until he talked with his *1084 girlfriend, but, after speaking with her, made an oral incriminating statement.
At trial Hansbrough moved to suppress his statement and the evidence against him, claiming that they had been procured subsequent to an illegal arrest; that the police had made his girlfriend their tool and that, therefore, his statement had been coerced; and that he had, in fact, exercised his right to remain silent. The trial court conducted a suppression hearing and ruled against Hansbrough. On appeal Hansbrough argues that the court erred. We disagree.
"A lawful investigatory stop for a traffic violation is not invalidated by the fact that an officer would not have stopped a defendant but for the suspicion that the defendant was involved in criminal activity." State v. Ogburn, 483 So.2d 500, 501 (Fla. 3d DCA 1986). Moreover, stopping a person suspected of further criminal activity for a minor traffic infraction for which any citizen could be stopped is not an unlawful pretext stop. Bascoy v. State, 424 So.2d 80 (Fla. 3d DCA 1982). The officer who arrested Hansbrough saw him make an illegal turn and observed that his car had a broken windshield. These are infractions for which any citizen could have been stopped notwithstanding the officer's knowledge that Hansbrough was a possible suspect in a crime. Likewise, after finding that the driver's license had been suspended for a second violation, the officer could have arrested any citizen for driving with such a suspended license. We therefore find the initial stop and arrest to have been valid. Because the stop and initial arrest were valid, we hold that the trial court did not err in failing to suppress the evidence flowing from that stop and arrest. We find no merit to Hansbrough's arguments that his statement had been coerced and that he had exercised his right to remain silent. Rather, the record demonstrates that Hansbrough talked to the police freely and voluntarily.
Hansbrough also argues that the trial court erred in not allowing him to demonstrate a state witness' motive, bias, or interest in testifying at this trial and in denying his motion to compel disclosure of promises and immunity given to this witness. The witness, Shadrick Martin, testified that, while in jail, Hansbrough told him that he had not lost consciousness during this murder and that he had lied when he said he could not remember stabbing the victim. At the time of Hansbrough's trial Martin was awaiting sentencing on a felony burglary plea. Additionally, he had previously been acquitted of an unrelated murder charge which had been prosecuted by the same state attorney trying the state's case against Hansbrough. Martin testified that the state had made no deals with him, and the state attorney advised defense counsel that Martin had not been given immunity. The trial court refused to allow defense counsel to question Martin about possible promises made him by the state, but ruled that counsel could review the transcript of Martin's plea to the burglary charge and could interview the state's attorney handling that case to determine if any promises had been made to Martin in return for his testimony against Hansbrough.
We agree with the trial court's resolution of this issue. While the state cannot withhold material evidence favorable to an accused, it is not the state's duty to actively assist the defense in investigating the case. State v. Coney, 294 So.2d 82 (Fla. 1973). The defense has the initial burden of trying to discover impeachment evidence, and the state is not required to prepare the defense's case. Medina v. State, 466 So.2d 1046 (Fla. 1985). This is especially true when the evidence is as accessible to the defense as to the state. See James v. State, 453 So.2d 786 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984). The prosecutor in the instant case was not the same one that prosecuted Martin on the felony burglary charge, and the court's allowing the defense to review the plea transcript and interview Martin's prosecutor was reasonable. Any error in the court's ruling, if indeed there be any, is harmless beyond a reasonable doubt.
Hansbrough also claims that the trial court erred in refusing to let a defense witness, another cellmate, testify as to *1085 Martin's fear of the state attorney prosecuting Hansbrough. According to Hansbrough, this precluded his impeachment of Martin's credibility. In reality, however, several of Hansbrough's witnesses testified that Martin had a reputation of not telling the truth and that he feared being sentenced as an habitual offender, among other things. Therefore, we cannot see how disallowing the complained-about testimony prejudiced Hansbrough, and we find no merit to this point.
During the state's rebuttal on Hansbrough's sanity, a state witness mentioned that he had reviewed the results of a polygraph examination conducted on Hansbrough. Defense counsel moved for a mistrial, which the trial court denied. Although polygraph evidence is inadmissible, Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984), the mere mention of a polygraph examination is not necessarily reversible error. Davis v. State, 461 So.2d 67 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985); Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976). After reviewing this record, we do not find that this witness' mention of a polygraph examination unduly prejudiced Hansbrough.
As a theory of defense, Hansbrough claimed that he suffered a "psychotic break" while committing these crimes. According to this theory, he was sane when he robbed the victim but insane when he stabbed her. Hansbrough requested four special jury instructions on sanity. The court refused the requested instructions and, instead, gave the standard jury instructions on felony murder and insanity. Hansbrough now claims that the trial court committed reversible error by not giving the requested instructions.
The defense is entitled to jury instructions on rules of law applicable to a theory of defense if evidence has been introduced to support those instructions. Smith v. State, 424 So.2d 726 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983). Nine psychiatrists and psychologists, called by both sides, testified at this trial. Some testified that Hansbrough had suffered a psychotic break or an episode of temporary insanity; others stated that he remained criminally responsible throughout the robbery and murder. After reading this record and comparing the requested instructions with those actually given, we agree with the state that the standard instructions adequately apprised the jury as to the law and the evidence and that the requested instructions would only have engendered confusion.
At trial Hansbrough tried to introduce testimony through the medical examiner, a deputy sheriff, and her parents and husband that the homicide victim had been raped seven years prior to her death. According to Hansbrough, a prior violent act committed on the victim was relevant to her grabbing Hansbrough's hair when he took the money bag from her, thereby triggering his temporary insanity. The trial court found this testimony not relevant and refused to allow it into evidence. The admission of evidence is within the trial court's discretion. Medina. Other witnesses testified about the hair-pulling incident and its possible effect on Hansbrough, and we find no abuse of discretion in the trial court's not allowing this particular testimony.
Hansbrough also argues that the trial court erred 1) in excusing two prospective jurors for cause at the state's behest; 2) in failing to excuse a prospective juror for cause as requested by the defense; and 3) in allowing the state to excuse for cause prospective jurors opposed to the death penalty. We find no merit to these contentions. Our review of the voir dire transcript discloses that the trial court's rulings comported with the dictates of Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Moreover, the "death qualification" of juries has been upheld recently. Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).
In sentencing Hansbrough to death the trial court overrode the jury's recommendation of life imprisonment, finding that the *1086 aggravating circumstances (committed during a robbery; committed to avoid or prevent a lawful arrest and to effect an escape from custody; heinous, atrocious, or cruel; and committed in a cold, calculated, and premeditated manner) outweighed the mitigating evidence. Hansbrough now claims that the trial court's override does not meet the standard of Tedder v. State, 322 So.2d 908 (Fla. 1975).
To further his claim of an improper override, Hansbrough argues that the trial court erred in not finding several statutory mitigating circumstances. Finding or not finding the existence of mitigating factors is within the trial court's domain, and such findings will not be reversed because an appellant views them in a different light. Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985); Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982). The instant trial judge found that Hansbrough's mitigating evidence did not rise to the level of the statutory mitigating circumstances, but he fashioned a composite nonstatutory mitigating circumstance which considered many facets of Hansbrough's life and problems. The trial judge engaged in the reasoned weighing and analysis required for findings in support of a death sentence, and we cannot fault him for not finding the statutory mitigating circumstances now urged by Hansbrough.
The aggravating circumstances, on the other hand, are a different matter. Hansbrough argues that the trial court incorrectly found three of the four aggravating factors used to support his death sentence, i.e., heinous, atrocious or cruel; committed to avoid or prevent arrest; and committed in a cold, calculated, and premeditated manner.
This record supports the finding of heinous, atrocious, or cruel. The medical examiner identified several of the victim's thirty-some stab wounds as defensive wounds, indicating she was aware of what was happening to her. Moreover, testimony indicated that she did not die, or even necessarily lose consciousness, instantly.
We hold, however, that the trial court improperly found the two other aggravating circumstances that Hansbrough complains about. In relying on committed to prevent or avoid arrest, the trial court found that Hansbrough had killed the victim to eliminate a witness. The mere fact that the victim might have been able to identify her assailant is not sufficient to support finding this factor. Bates v. State, 465 So.2d 490 (Fla. 1985). Rather, "it must be clearly shown that the dominant or only motive for the murder was the elimination of" the victim/witness. Oats v. State, 446 So.2d 90, 95 (Fla. 1984). Instead of an intended witness elimination murder, it is more likely that this robbery simply got out of hand, as indicated by Hansbrough's stabbing the victim more than thirty times while in an apparent frenzy.
Nor do we find the evidence sufficient to support the aggravating factor of committed in a cold, calculated, and premeditated manner. This aggravating factor is reserved primarily for execution or contract murders or witness-elimination killings. Bates. Moreover, this circumstance goes to the state of mind, intent, and motivation of the perpetrator. Stano. As stated above, this appears to be a robbery that got out of hand. Hansbrough's frenzied stabbing of the victim does not demonstrate the cold and calculated premeditation necessary to aggravate his sentence with this statutory factor.
We are left, therefore, with only two valid aggravating circumstances. In Tedder we stated: "In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." 322 So.2d at 910. On the facts and circumstances of this case there is no reason to override the jury's recommendation. The testimony regarding Hansbrough's extensive history of drug abuse, his difficult childhood, and his mental and emotional problems could have persuaded the jury as to the reasonableness of recommending life imprisonment. When *1087 compared to similar cases, we agree that the trial court should not have overridden the jury's recommendation and sentenced Hansbrough to death. Compare Burch v. State, 343 So.2d 831 (Fla. 1977) (victim's suffering thirty-some stab wounds, indications of defendant's mental problems, jury recommendation of life imprisonment), and Jones v. State, 332 So.2d 615 (Fla. 1976) (over forty stab wounds inflicted in a frenzied attack, defendant's mental deficiency, jury override). We therefore direct the trial court to resentence Hansbrough to life imprisonment with no possibility of parole for twenty-five years.
As his final points on appeal, Hansbrough challenges his sentence for armed robbery, claiming that the trial court 1) gave him an illegal sentence of seventy-five years, 2) erred in scoring victim injury, and 3) improperly departed from the recommended sentence.[*] Contrary to Hansbrough's contention, the trial court could, if supported by valid reasons for departure, impose a sentence of seventy-five years for armed robbery. § 812.13(2)(a), Fla. Stat. (1985). Because the sentencing guidelines apply to that sentence, however, the trial court should not have retained jurisdiction for one-third of the armed robbery sentence. Dawson v. State, 491 So.2d 310 (Fla. 4th DCA 1986); Kennedy v. State, 490 So.2d 195 (Fla. 2d DCA 1986); Wright v. State, 487 So.2d 1176 (Fla. 1st DCA 1986).
Hansbrough's argument that points should not have been scored for victim injury because victim injury is not an element of armed robbery is a correct statement of current law. Hendry v. State, 460 So.2d 589 (Fla. 2d DCA 1984). The trial court, therefore, should not have scored points for victim injury. Without the twenty-one points for victim injury the recommended range would be three and one-half to four and one-half years rather than the four and one-half to five and one-half years found by the trial court.
The trial court gave written reasons for departing from the recommended sentence and Hansbrough now claims that most of those reasons are invalid. The court set out the reasons as follows:
1. Defendant sentenced to death for Indictment-First Degree Murder count I.
2. Excessive force in the homicide which occurred during this armed robbery.
3. Cruelty established by infliction of 31 stab wounds, pain and anguish of victim.
4. Armed robbery planned in advance by the defendant.
5. Used a dangerous weapon in the commission of the armed robbery.
6. Presumptive guideline range not commensurate with seriousness of case.
7. Department of corrections recommendation was "dispose of this case in the most severe manner possible."
Hansbrough's conviction of first-degree murder is implicit in the first reason, imposition of death sentence for first-degree murder, but could not be scored on the armed robbery scoresheet. As a reason for departure, Hansbrough's conviction and sentence for first-degree murder are not prohibited by the guidelines, have not already been taken into account by the guidelines, and are not inherent components of armed robbery. See State v. Mischler, 488 So.2d 523 (Fla. 1986). We therefore find this to be a valid reason for departure. Insofar as the third reason, cruelty established by thirty-one stab wounds, boils down to the severe injury and death suffered by this victim, it is also valid because victim injury is not a component of armed robbery.
Excessive force, reason two, has been upheld as a valid reason for departure. Jefferson v. State, 489 So.2d 860 *1088 (Fla. 1st DCA 1986); Harris v. State, 482 So.2d 548 (Fla. 4th DCA 1986); Sabb v. State, 479 So.2d 845 (Fla. 1st DCA 1985). Excessive force, however, will, virtually always, result in victim injury. Upholding this reason in this case, therefore, would be duplicitous because we have upheld reason three as a valid ground for departure.
We find the four remaining reasons for departure invalid: 1) Reason four  Knowlton v. State, 466 So.2d 278 (Fla. 4th DCA 1985) (premeditation is an inherent component of any robbery), review denied, 476 So.2d 675 (Fla. 1985); Carney v. State, 458 So.2d 13 (Fla. 1st DCA 1984) (same), approved on other grounds, 476 So.2d 165 (Fla. 1985). 2) Reason five  use of a dangerous weapon is inherent in armed robbery. See § 812.13; Mischler. 3) Reason 6  Scurry v. State, 489 So.2d 25 (Fla. 1986) (lesser sentence than that given is not commensurate with the seriousness of the crime is not a valid reason for departure). 4) Reason 7  see Scurry (recommendation of preparer of PSI is not a valid reason for departure). The state has not demonstrated beyond a reasonable doubt that the absence of these invalid reasons for departure would not affect the sentence for armed robbery. Albritton v. State, 476 So.2d 158 (Fla. 1985). Therefore, we remand for resentencing on that charge and remind the trial court to delete the retention of jurisdiction and the scoresheet points for victim injury.
We affirm Hansbrough's convictions, but remand for resentencing in accordance with this opinion.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
ADKINS, J. (Ret.), concurs in the convictions, but dissents from the sentence.
NOTES
[*] Hansbrough also argues that he should not have been convicted of both felony murder and the underlying felony of armed robbery and asks that we reconsider State v. Enmund, 476 So.2d 165 (Fla. 1985). We find no merit to this point and refuse to reconsider Enmund.