603 So.2d 1270 (1992)
Gerald Wayne BUNNEY, Petitioner,
v.
STATE of Florida, Respondent.
No. 78141.
Supreme Court of Florida.
July 2, 1992.
Rehearing Denied September 10, 1992.
Stevan T. Northcutt of Levine, Hirsch, Segall & Northcutt, P.A., Tampa, for petitioner.
Robert A. Butterworth, Atty. Gen., and Stephen A. Baker and Peggy A. Quince, Asst. Attys. Gen., Tampa, for respondent.
HARDING, Justice.
We review Bunney v. State, 579 So.2d 880 (Fla. 2d DCA 1991), in which the Second District Court of Appeal certified the following question as one of great public importance:
IN SENTENCING FOR A FELONY WHERE THERE IS A CONTEMPORANEOUS CONVICTION OF AN UNSCORED CAPITAL FELONY, IS IT PROPER TO DEPART BASED ON THE DEFENDANTS CAPITAL CONVICTION WHEN THE APPLICABLE GUIDELINES PROVIDE THAT VICTIM INJURY IS SCOREABLE?
Id. at 881. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Gerald Wayne Bunney was convicted of the felony murder of Tonya McGrew, a five-year-old girl. Bunney received life imprisonment without possibility of parole for twenty-five years for the murder charge, and a consecutive life imprisonment for the underlying felony of kidnapping. The trial judge departed from the sentencing guidelines range of five and one-half years to seven years on the kidnapping charge. As the reason for the departure, the trial judge wrote that the "[s]coresheet fails to take into consideration [that the] defendant also stands convicted of murder in the first degree arising out of the same criminal episode." The Second District Court of Appeal affirmed the departure based on our decisions in Hansbrough v. *1271 State, 509 So.2d 1081 (Fla. 1987), and Livingston v. State, 565 So.2d 1288 (Fla. 1988), and certified the question to this Court. We answer the certified question in the affirmative.
Bunney argues that the trial court erred when it departed from the sentencing guidelines by using the unscored capital offense as the reason for departure. He points out that the scoresheet for his kidnapping conviction included points for the victim's death, thus, the trial court's reason for departure was a factor already taken into account by the guidelines. Bunney concludes that the trial court's departure violated Hendrix v. State, 475 So.2d 1218, 1220 (Fla. 1985), where this Court held that factors already taken into account in calculating the sentencing guidelines cannot support a departure.
In Hansbrough and Livingston, we held that a contemporaneous conviction of an unscored capital felony is a valid reason for departure. We recognize that both Hansbrough and Livingston precede the 1987 amendment to the guidelines requiring that "[v]ictim injury shall be scored for each victim physically injured during a criminal episode or transaction." Florida Rules of Criminal Procedure, 509 So.2d 1088, 1089 (Fla. 1987). We also recognize that the sentencing guidelines already include points for the victim's death, which is an inherent component of a capital conviction. However, we find that a departure based on a contemporaneous unscored capital conviction is not a factor already taken into consideration by the guidelines through the victim injury points. Thus, we uphold our previous decisions allowing a trial court to depart from the sentencing guidelines for a contemporaneous unscored capital conviction. We recommend, however, that the Florida Sentencing Guidelines Commission visit this issue and clarify the sentencing guidelines.
Bunney also raises three other issues for this Court to review: 1) whether the prosecutor's closing argument contained improper and prejudicial comments; 2) whether the trial court erred in allowing an alternate juror to sit with the jury, after deliberations had begun, in order to review a videotaped confession in the presence of the court, counsel, and the defendant; and 3) whether the trial court erred in refusing to allow testimony concerning Bunney's alleged epileptic condition absent a plea of insanity as required by Chestnut v. State, 538 So.2d 820 (Fla. 1989). We find that the first and second issues are without merit, and thus decline to discuss them. The only issue that merits discussion is the third one.
Bunney argues that the trial court erred in holding that he could not raise epilepsy as a defense to his ability to form the intent required to commit a first-degree felony murder and kidnapping outside the context of an insanity plea. For support, Bunney cites the First District Court of Appeal's decision in Wise v. State, 580 So.2d 329 (Fla. 1st DCA 1991). In Wise, the district court reversed the trial court's exclusion of an epileptic defense because the case "present[ed] a question of the defendant's consciousness of his acts themselves, not of his understanding of their wrongful nature." Id. at 330. Thus, Bunney concludes that he should also be allowed to raise an epileptic defense outside the context of an insanity plea.
The facts from the record show that on the day after he strangled the five-year-old victim, Bunney disclosed his deed to a friend and police on his own initiative. In a spontaneous police interview conducted that morning, the following colloquy took place:
Q. Okay. Then what did you do? You pulled off somewhere up there, right?
A. Right, and I'm not really sure. I can say one thing, that I also neglected to 
Q. Sure.
A.  to say, is during  during the course of me being there, getting her and driving, there was like  I wouldn't say something funny in my head, but it was like static all around me.
Q. Uh-huh.
A. You know, so that was something I neglected to say.

*1272 Q. Well, what does that mean? I  clarify that for me.
A. All right, you know how your foot or hand goes to sleep and when it starts to wake back up, how it feels, the shock?
Q. Yeah.
A. That's what was going through my head.
Q. Okay.
A. And, also, I forgot to tell you, one part of my medical history  well, I guess I would still be considered an epileptic to a certain extent. I've been off medication for, like, four years.
Q. Uh-huh.
A. I used to take Dilantin.
Prior to trial, the court granted the State's motion in limine, prohibiting Bunney from presenting lay or expert testimony concerning his epilepsy, pursuant to Chestnut, wherein this Court ruled that evidence of an abnormal mental condition not constituting legal insanity is inadmissible to disprove specific intent. At trial, the videotaped interview was played for the jury. After the State rested its case, Bunney proffered the following: Three of Bunney's friends would testify that on numerous occasions they had observed him experience petit mal seizures wherein he would "pause in his speech, essentially blackout and then continue talking, and when he continued talking, he was disoriented, and had difficulty knowing where he left off;" Bunney's mother would testify that "at about the age of fourteen or fifteen, that the defendant began to have what were later diagnosed to be epileptic seizures, that he would blackout, that he would have seizures," and that he had been treated with Dilantin; Dr. Maher, a forensic psychiatrist, would testify that Bunney's symptoms on the night of the murder were consistent with episodes of epileptic seizure.
The trial court excluded the proffered testimony and the district court affirmed, concluding that evidence of epilepsy is admissible only in the context of an insanity defense and is inadmissible to show lack of intent or premeditation.
In Chestnut, the defendant sought to introduce wide-ranging evidence of diminished mental capacity (e.g., low intelligence, seizure disorder following head trauma, diminished cognitive functioning and verbal skills, passive and dependent personality, and exaggerated need for affection) to establish that he lacked the requisite mental state for premeditated first-degree murder. Based on strong policy concerns, this Court rejected the diminished capacity defense. In its analysis, the Court noted the distinction between evidence of commonly understood conditions, such as intoxication or epilepsy, on the one hand, and evidence of relatively esoteric conditions, such as general mental impairment, on the other:
"We recognize that there are exceptions to the basic principle that all individuals are presumed to have a similar capacity for mens rea. The rule that evidence of intoxication may be employed to demonstrate the absence of specific intent figured prominently in the [U.S. v.] Brawner, [471 F.2d 969 (D.C. Cir.1972)] court's advocacy of consistency in the treatment of expert evidence of mental impairment. The asserted analogy is flawed, however, by the fact that there are significant evidentiary distinctions between psychiatric abnormality and the recognized incapacitating circumstances. Unlike the notion of partial or relative insanity, conditions such as intoxication, medication, epilepsy, infancy, or senility are, in varying degrees, susceptible to quantification or objective demonstration, and to lay understanding. As the Ninth Circuit observed ...
`Exposure to the effects of age and of intoxicants upon state of mind is a part of common human experience which fact finders can understand and apply; indeed, they would apply them even if the state did not tell them they could. The esoterics of psychiatry are not within the ordinary ken.'"
Chestnut, 538 So.2d at 823 (emphasis added) (citation and footnotes omitted) (quoting Bethea v. United States, 365 A.2d 64, 88 (D.C. 1976), cert. denied, 433 U.S. 911, 97 *1273 S.Ct. 2979, 53 L.Ed.2d 1095 (1977)). This Court further explained:
"It takes no great expertise for jurors to determine whether an accused was `"so intoxicated as to be mentally unable to intend anything (unconscious),"' ... whereas the ability to assimilate and apply the finely differentiated psychiatric concepts associated with diminished capacity demands a sophistication (or as critics would maintain a sophistic bent) that jurors (and officers of the court) ordinarily have not developed. We are convinced as was the Bethea court, that these `significant evidentiary distinctions' preclude treating diminished capacity and voluntary intoxication as functional equivalents for purposes of partial exculpation from criminal responsibility."
Chestnut, 538 So.2d at 823 (citation omitted) (quoting State v. Wilcox, 70 Ohio St.2d 182, 436 N.E.2d 523, 530 (1982)). Thus under this analysis, while evidence of diminished capacity is too potentially misleading to be permitted routinely in the guilt phase of criminal trials, evidence of "intoxication, medication, epilepsy, infancy, or senility" is not.
Although this Court did not expressly rule in Chestnut that evidence of any particular condition is admissible, it is beyond dispute that evidence of voluntary intoxication or use of medication is admissible to show lack of specific intent. See Gurganus v. State, 451 So.2d 817 (Fla. 1984). If evidence of these self-induced conditions is admissible, it stands to reason that evidence of certain commonly understood conditions that are beyond one's control, such as those noted in Chestnut (epilepsy, infancy, or senility), should also be admissible. In the present case, Bunney simply sought to show that he committed the crime during the course of a minor epileptic seizure.[1] A jury is eminently qualified to consider this.
Accordingly, we quash the opinion of the district court below on this issue and approve the Wise decision. We remand the case for proceedings consistent with this opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, GRIMES and KOGAN, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion.
SHAW, Justice, concurring in part, dissenting in part.
I disagree with the majority's conclusion that a contemporaneous capital felony may serve as grounds for departure at sentencing on a noncapital felony.
The legislature has determined that two crimes, first-degree murder and sexual battery of a child, are more serious than others and has prescribed specific penalties for these capital felonies independent of the sentencing guidelines. See §§ 782.04(1)(a), 794.011(2), Fla. Stat. (1989). The penalties  the most severe prescribed by law  are statutorily defined: either death or life imprisonment without chance of parole for twenty-five years. § 775.082, Fla. Stat. (1989). The penalties for all lesser felonies are determined pursuant to the guidelines. See § 921.001, Fla. Stat. (1989); Fla.R.Crim.P. 3.701. Significantly, capital felonies are not mentioned on the scoresheets used in calculating sentences for noncapital felonies. See Fla.R.Crim.P. 3.988(a)-(i).
The majority reasons that because capital felonies are not factored into the scoresheets, a contemporaneous capital felony may support departure at sentencing on a noncapital crime. In my opinion, this analysis is incomplete.
Departure based on a contemporaneous capital felony addresses the fact that a second crime was committed and is unscored. This fact standing alone, however, is insufficient to support departure.[2] Obviously, *1274 many factors were rejected as meritless for scoring purposes by the Florida Sentencing Guidelines Commission and the legislature when the scoresheets were devised. For this reason, departure analysis should be two-pronged: The court should determine first whether the proposed factor was already incorporated into the scoresheet (i.e., whether a double-dipping problem exists) and, where it was not, whether the unscored factor was deliberately rejected as a basis for extra punishment. In the present case, the majority addresses the first step in this analysis, then stops.
I agree that capital felonies are not incorporated into the scoresheets, either explicitly[3] or implicitly,[4] and that the first step in the inquiry is thus satisfied. As to the second step, however, it seems to me that if the Guidelines Commission and legislature had intended for capital felonies to be a consideration at sentencing on noncapital crimes, they simply would have said so on the scoresheets, as they did with every other class of felony.[5] Instead, the Commission stated clearly in its prefatory statement that "[t]he guidelines do not apply to capital felonies," Committee Note to Fla. R.Crim.P. 3.701(c), and the legislature stated with equal emphasis that "[t]he guidelines shall be applied to all felonies, except capital felonies," § 921.001(4)(a), Fla. Stat. (1989), and then both bodies excluded any further mention of capital felonies from the guidelines. See § 921.001, Fla. Stat. (1989); Fla.R.Crim.P. 3.701, 3.988(a)-(i). It is illogical to conclude that a factor that was deliberately rejected by the Guidelines Commission and by the legislature as a basis for even a slight increase through scoresheet points may somehow nevertheless support an unlimited increase[6] through departure.
The intent of the Guidelines Commission and legislature is clear: For sentencing purposes, capital and noncapital crimes are entirely separate concepts, not to be intermixed. Capital felonies are to be fully punished outside the guidelines through the stiffest of penalties and are not to be further punished at sentencing on lesser crimes. I would quash the decision of the district court on this issue and rule that capital felonies  contemporaneous or not  may not support departure.[7]
NOTES
[1] To the extent Bunney sought to introduce evidence relating to a general mental impairment or other esoteric condition, that evidence was properly excluded under Chestnut v. State, 538 So.2d 820 (Fla. 1989).
[2] So too is the fact that a contemporaneous crime was committed. See Barfield v. State, 594 So.2d 259, 261 (Fla. 1992) ("we find that temporal proximity alone does not constitute a clear and convincing reason to depart from the guidelines").
[3] As noted above, capital felonies are not mentioned on the scoresheets. See Fla.R.Crim.P. 3.988(a)-(i).
[4] As to whether capital felonies are implicitly factored into the scoresheets through victim injury points, I believe the Florida Sentencing Guidelines Commission and the legislature deliberately segregated capital from noncapital felonies for sentencing purposes and devised the scoresheets for noncapital felonies accordingly, as explained above. In the present case, the victim injury points for death are conceptually unrelated to the capital felony  they were added not because a capital felony occurred but because a death took place during the course of the kidnapping. Accordingly, double-dipping is not a factor here.
[5] The scoresheets for all crimes explicitly provide that points are to be assessed for every class of felony (life, first-degree punishable by life, first-degree, second-degree, and third-degree), except capital felonies. See Fla.R.Crim.P. 3.988(a)-(i).
[6] The extent of departure is not subject to appeal. See § 921.001(5), Fla. Stat. (1989). Departure sentences are capped only by statutory maximums. Id. For statutory maximums, see § 775.082, Fla. Stat. (1989).
[7] This Court's analysis on this issue in both Livingston v. State, 565 So.2d 1288 (Fla. 1988), and Hansbrough v. State, 509 So.2d 1081 (Fla. 1987), is equally brief. I would recede from both.