629 So.2d 1046 (1993)
Melissa Sue EASLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 92-03926.
District Court of Appeal of Florida, Second District.
December 29, 1993.
*1047 Stevan T. Northcutt of Levine, Hirsch, Segall & Northcutt, P.A., Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
PATTERSON, Judge.
Melissa Sue Easley appeals from her convictions of first-degree murder and attempted first-degree murder. She contends that the trial court erred in precluding her expert witness' testimony on the voluntary intoxication defense. We agree and reverse.
Easley and the deceased, William Penn Parsons, had a dating relationship which Parsons ended in December 1990. In 1991, Parsons began a relationship with Carmen Coton. Late in the evening on Sunday, October 20, 1991, Parsons was with Coton in his apartment when he heard knocking on the glass sliding doors. He refused admittance to Easley and her companion, Cliff Donovan, who wanted "to come in for a drink." Some time later Easley returned and began knocking on the door saying, "I want my swimsuit." Coton, who recalled seeing a woman's swimsuit in Parsons' closet, retrieved the swimsuit and delivered it to Easley on the apartment patio. Coton and Easley engaged in a friendly conversation, and Easley gave simple "yes" and "no" responses to Coton's statements. As the conversation progressed, Easley began searching through her purse. She produced a handgun and fired several shots at Coton. As Coton fled to a nearby apartment, she heard additional shots. A neighbor also heard the shots and saw Easley running from the scene. Later that night a local tavern owner saw Easley barefoot in the tavern doing a "wild dance" by herself. After the owner denied her further drinks, Easley ordered some takeout food and left.
The police found Parsons dead on the apartment floor. He had been shot once in the chest, once in the back, and five times in the back of his right shoulder. The morning after the murder the police confronted Easley at her apartment. She seemed to be confused. During an interview later that day at the police station, Easley told the detectives that she had been home all Sunday night, that she did not remember going to Parsons' apartment, and that the last thing she remembered was telephoning Parsons between 11:30 p.m. and midnight about getting her swimsuit back. At trial, Easley's and Donovan's testimony established that Easley had spent the day drinking and taking various medications. Donovan had passed out on Easley's couch at approximately 10:00 p.m.
In the context of these facts, Easley asserted a voluntary intoxication defense, averring that she was unable to form the specific intent required to commit the crimes charged. The defense retained Michael Maher, M.D., a psychiatrist, as an expert witness. Dr. Maher's opinion was that because of various prescription drugs Easley took, together with the alcohol she ingested, she was unable to form the specific intent to premeditate a murder. Dr. Maher considered the appellant's history of severe clinical depression relevant to the question of whether Easley was intoxicated to the point that she could not form the specific intent to kill.
On August 25, 1992, after jury selection, but before opening statements, the state served a motion in limine, seeking to preclude the defense from making "[a]ny reference to mental disease or defect; specifically incidences of depression and any dissociative state the defendant may have experienced *1048 previously." The trial court, after brief argument by counsel, deferred ruling on the motion.
At the close of the state's case, the trial court revisited the motion in limine. Defense counsel proffered that Dr. Maher would testify that alcohol and drugs affect everyone differently, depending on their underlying mental condition. The court ruled that Easley "will not be allowed to introduce evidence relating to her general mental impairment or other esoteric condition." During Easley's testimony, the trial court limited her testimony to the amounts and types of alcohol and the names of the drugs and prescription medication that she consumed on the day of the murder. She was not permitted to describe her prior medical history or for what conditions the medications had been prescribed. She testified that her memory of the night of the murder was limited to making some telephone calls and that she had no memory of the events surrounding the murder.
When the defense sought to call Dr. Maher, the following exchange occurred between the trial court and Dr. Maher outside the presence of the jury.
THE COURT: I want you to assume, Doctor, that you have no knowledge whatsoever of any prior injuries, hospitalizations, mental problems, mental depressions, period, concerning Ms. Easley. And the only hypothetical that is going to be asked you is, "Doctor, assume that on Sunday, October 20, 1991, Ms. Easley consumed A, B, C, D, E, F, G, H, ad infinitum, assume it to be true; do you then have an opinion as to whether or not she could form the specific intent to commit murder?"
THE WITNESS: So her depression, other things would not be things I could rely on?
THE COURT: Better believe it.
... .
THE COURT: Dr. Maher, if you include all of the history that you have learned about Ms. Easley in the past, then what would be your opinion?
THE WITNESS: I could certainly form an opinion.
THE COURT: Well, what is your opinion?
THE WITNESS: My opinion would be that she did not have the capacity to form the intent to commit First Degree Murder.
When Dr. Maher stated that he could not render an opinion based on the trial court's restriction of his thought process, he was precluded from taking the stand. The court's ruling also precluded the defense from calling several lay witnesses who would have testified about Easley's emotional difficulties, her prior psychiatric treatment, and her use of alcohol, illegal drugs and prescription medications. The defense rested and Easley was convicted as charged.
This appeal presents two distinct issues. The first is the role of a trial court in limiting or precluding expert testimony. The second is the type and extent of evidence which may be presented in support of a voluntary intoxication defense.
In regard to the first issue, several sections of chapter 90, Florida Statutes (1991), are applicable:
90.702 Testimony by experts.  If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
90.703 Opinion on ultimate issue.  Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.
90.704 Basis of opinion testimony by experts.  The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, him at or before the trial. If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.

*1049 90.705 Disclosure of facts or data underlying expert opinion. 
(1) Unless otherwise required by the court, an expert may testify in terms of opinion or inferences and give his reasons without prior disclosure of the underlying facts or data. On cross-examination he shall be required to specify the facts or data.
In reviewing the role of the trial court in the application of these sections, the court in Holiday Inns, Inc. v. Shelburne, 576 So.2d 322, 335 (Fla. 4th DCA), appeal dismissed, 589 So.2d 291 (Fla. 1991), observed:
[T]here are four requirements for determining the admissibility of expert testimony: (1) that the opinion evidence be helpful to the trier of fact; (2) that the witness be qualified as an expert; (3) that the opinion evidence can be applied to evidence offered at trial; and (4) that evidence, although technically relevant, must not present a substantial danger of unfair prejudice that outweighs its probative value.
We know of no authority for the proposition that a trial court may invade the mind and thought process of an expert witness and restrict that thought process if the information known to the expert is of the type reasonably relied on by experts in the field. To the contrary, "the sufficiency of the facts required to form an opinion must normally be decided by the expert himself because neither trial judges nor appellate judges are usually in a position to determine precisely which facts are dispensable and which are essential to the validity of the opinion reached." Quinn v. Millard, 358 So.2d 1378, 1382 (Fla. 3d DCA 1978). It is the role of trial counsel, not the trial court, to discredit the opinion of an expert through cross-examination or the presentation of rebuttal evidence. Thus, the trial court committed reversible error in precluding Dr. Maher's testimony.
The second issue, concerning the type of evidence which may be presented to support a voluntary intoxication defense, must be resolved for the retrial of this case. It is clear from the record that the trial court viewed the prohibited evidence to be an attempt to rely on a diminished capacity defense. To this end, the court relied on Chestnut v. State, 538 So.2d 820 (Fla. 1989), and a footnote in Bunney v. State, 603 So.2d 1270 (Fla. 1992). In Chestnut, the defendant attempted to establish his inability to formulate the necessary premeditation to commit first-degree murder due to low intelligence and brain damage resulting from a traumatic blow to the head. In holding such evidence to be inadmissible and rejecting the defense of diminished capacity, our supreme court stated:
It could be said that many, if not most, crimes are committed by persons with mental aberrations. If such mental deficiencies are sufficient to meet the definition of insanity, these persons should be acquitted on that ground and treated for their disease. Persons with less serious mental deficiencies should be held accountable for their crimes just as everyone else.
Chestnut, 538 So.2d at 825.
In Bunney, the supreme court held that evidence of Bunney's epilepsy was admissible on the issue of specific intent:
Although this Court did not expressly rule in Chestnut that evidence of any particular condition is admissible, it is beyond dispute that evidence of voluntary intoxication or use of medication is admissible to show lack of specific intent. See Gurganus v. State, 451 So.2d 817 (Fla. 1984). If evidence of these self-induced conditions is admissible, it stands to reason that evidence of certain commonly understood conditions that are beyond one's control, such as those noted in Chestnut (epilepsy, infancy, or senility), should also be admissible. In the present case, Bunney simply sought to show that he committed the crime during the course of a minor epileptic seizure.[1] A jury is eminently qualified to consider this.
Bunney, 603 So.2d at 1273. The court then qualified its holding in the following footnote:
To the extent Bunney sought to introduce evidence relating to a general mental impairment or other esoteric condition, that evidence was properly excluded under Chestnut v. State, 538 So.2d 820 (Fla. 1989).
*1050 603 So.2d at 1273 n. 1. Neither Chestnut or the footnote in Bunney apply here. Neither case involved a voluntary intoxication defense, which Florida law recognizes as a defense in specific intent crimes. See Gurganus v. State, 451 So.2d 817 (Fla. 1984). As was explained in the proffer of Dr. Maher's testimony, the effect of alcohol on a particular individual is directly related to many factors unique to that individual. In Dr. Maher's opinion, it was the combination of Easley's use of alcohol and drugs superimposed on her long-standing depression that rendered her incapable of formulating a specific intent to kill on the night in question. We have determined in the first issue that the expert may consider factors such as the defendant's prior mental condition in arriving at an opinion. We also hold that evidence of these conditions may properly go before the jury in support of the expert's opinion. See Mullin v. State, 425 So.2d 219 (Fla. 2d DCA 1983). The exclusion of Dr. Maher's opinion and the underlying facts upon which it was based, having eviscerated Easley's only real defense to the crimes, was not harmless error.
Reversed and remanded for a new trial.
HALL, A.C.J., and BLUE, J., concur.