862 So.2d 679 (2003)
John Ruthell HENRY, Appellant,
v.
STATE of Florida, Appellee.
No. SC02-804.
Supreme Court of Florida.
October 9, 2003.
Rehearing Denied December 19, 2003.
*680 Baya Harrison, Monticello, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Candance M. Sabella, Senior Assistant Attorney General, Chief, Capital Appeals, Tampa, FL, for Appellee.
PER CURIAM.
John Ruthell Henry appeals a circuit court order denying, after an evidentiary hearing, his motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. Having considered the issues raised in the briefs and having heard oral argument in this case, we affirm the order.

I. Facts
In 1985, during a dispute over Christmas presents for his wife's son, Henry stabbed his estranged wife in the throat thirteen times. He was tried, convicted, and sentenced to death. This Court reversed and remanded for new trial. Henry v. State, 574 So.2d 73 (Fla.1991). Upon retrial, Henry was again convicted of first-degree *681 murder and sentenced to death. On appeal, this Court affirmed. Henry v. State, 649 So.2d 1366 (Fla.1994), cert. denied, 515 U.S. 1148, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995).[1]
In his postconviction motion, Henry alleged that his retrial counsel was ineffective during the guilt phase of trial for failing to present evidence of Henry's mental state at the time of the offense, and particularly for relying on the theories of self-defense and diminished capacity and not presenting the defenses of insanity or voluntary intoxication. He also contended that counsel was ineffective during the penalty phase for failing to present available mental health mitigating evidence.[2] Several months after the evidentiary hearing, appellant filed a motion requesting the court either to take judicial notice that the United States Supreme Court had accepted jurisdiction in State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), rev'd, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), or permit amendment of the postconviction motion with a claim that the Florida death penalty statute is unconstitutional. The court denied that motion and later denied Henry's postconviction motion. The lower court found retrial defense counsel's conduct was "reasonable and within the wide range of professional assistance required in a capital case."
On appeal Henry raises five issues: (1) and (2) that retrial counsel was ineffective during the guilt phase of trial and that appellant was prejudiced thereby; (3) and (4) that retrial counsel was ineffective during the penalty phase of trial and appellant was prejudiced thereby; and (5) that Florida's death penalty statute is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We address each of these claims below.

II. Ineffective Assistance During the Guilt Phase
To prevail on a claim that defense counsel provided ineffective assistance, a defendant must demonstrate specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant also must demonstrate prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. Ineffective assistance of counsel claims present mixed questions of law and fact subject to plenary review, and this Court independently reviews the trial court's legal conclusions, while giving deference to the trial court's factual findings. Occhicone v. State, 768 So.2d 1037, 1045 (Fla.2000).
Henry contends that retrial counsel was ineffective for relying on the theories of self-defense and diminished capacity, which were not viable, and that he was prejudiced because another viable defense *682 was available. Each aspect of this claim fails.

A. The Self-Defense Theory
Henry first argues that no evidence supported the theory of self-defense used at trial. The record conclusively rebuts this argument. In his statement to police, Henry said he went to his estranged wife's house to discuss Christmas presents for her son. They argued, and she attacked him, cutting him three times with a kitchen knife. Henry then struggled with her and took the knife away. He "freaked out" and stabbed her thirteen times. An officer took pictures of Henry's wounds, but threw them away because they were unclear.
Henry contends that self-defense was not an available defense because he stabbed his wife many times and the police presented evidence contradicting that theory, such as the officer's testimony that the scratches on Henry's arm appeared to be made by thorns, not knives. Retrial counsel testified, and the record shows, however, that during trial he elicited evidence of the victim's violent nature and that the victim attacked Henry first. Thus, self-defense was consistent with Henry's version of events, and evidence existed to support it. In fact, counsel presented enough evidence of self-defense to justify a jury instruction on it.
Further, at the evidentiary hearing retrial counsel admitted that self-defense was an imperfect defense because of the repeated stabbing, but he stated that his defense strategy was twofold. See Lusk v. State, 498 So.2d 902, 905 (Fla.1986) (holding "trial counsel's decision to rely on self-defense here was a strategic choice which did not fall outside the acceptable range of competent choices" and stating that "[c]onsidering all the circumstances ... self-defense was arguably the only viable choice"). Counsel also argued for a depraved mind, second-degree murder conviction by emphasizing Henry's response to his wife's attack as a blinding rage. Accordingly, Henry has failed to meet the first prong of Strickland as to this part of the claim.

B. The Diminished Capacity Theory
Henry next argues that retrial counsel erroneously relied on a "diminished capacity" defense, which Florida law does not recognize. See State v. Bias, 653 So.2d 380, 382 (Fla.1995); Chestnut v. State, 538 So.2d 820, 821-25 (Fla.1989). The record conclusively rebuts this claim as well. In closing argument, retrial counsel emphasized that when Henry's wife cut him with a knife Henry "freaked out," and counsel argued that Henry was "blinded of what happened next." He told the jury the judge would instruct on manslaughter "and second-degree murder talking about the depraved mind, not requiring premeditation." At the evidentiary hearing below, retrial counsel explained that he sought to show the offense to be a "mindless, non-premeditated killing," to obtain a "depraved mind," second-degree murder conviction. Henry's claim is based on retrial counsel's apparent misuse of the term "diminished capacity" in a written response to an inquiry from Henry's postconviction counsel. Both the trial transcript and the testimony of retrial counsel at the evidentiary hearing, however, demonstrate that counsel used a depraved mind, not a diminished capacity, defense at retrial.

C. The Lack of Premeditation Theory
Finally, Henry urges that retrial counsel failed to present the defense that Henry was incapable of forming the premeditated intent to kill Suzanne because of his abuse of crack cocaine before the murder, which exacerbated his underlying psychotic mental condition. Henry claims that such a defense was available under *683 Gurganus v. State, 451 So.2d 817 (Fla. 1984). However, we have explained that "Gurganus simply reaffirmed the long-standing rule in Florida that evidence of voluntary intoxication is admissible in cases involving specific intent." Chestnut, 538 So.2d at 822. As we said in State v. Bias, Gurganus stands for the principle that "it is proper for an expert to testify `as to the effect of a given quantity of intoxicants' on the mind of the accused when there is sufficient evidence in the record to show or support an inference of the consumption of intoxicants." 653 So.2d at 383. Thus an expert "may need to explain why a certain quantity of intoxicants causes intoxication in the defendant whereas it would not in other individuals." Id.
To the extent that Henry's claim can be construed as alleging that retrial counsel should have used a voluntary intoxication defense, he fails to demonstrate error. Henry failed to present any evidence that he was actually intoxicated at the time of the offense. See Rivera v. State, 717 So.2d 477, 485 n. 12 (Fla.1998); see also Linehan v. State, 476 So.2d 1262, 1264 (Fla.1985) ("We emphasize that voluntary intoxication is an affirmative defense and that the defendant must come forward with evidence of intoxication at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged."). In fact, retrial counsel testified that a defense mental health expert advised him that the defense case was weak on the issue of specific intent, and Henry did not present any evidence that the mental health experts retrial counsel contactedor anyone elsewould have testified that Henry was intoxicated at the time of the offense with or without regard to any underlying mental condition.
We note, however, that we are unable to discern any difference between Henry's claim and the defense asserted in Easley v. State, 629 So.2d 1046 (Fla. 2d DCA 1993), of which we disapproved in Bias, 653 So.2d at 383. We held in Bias that a psychiatrist's testimony that it "was the combination of Easley's use of alcohol and drugs superimposed on her long-standing depression that rendered her incapable of formulating a specific intent to kill on the night in question," id. (quoting Easley, 629 So.2d at 1050), was inadmissible because it "constituted evidence of the defendant's diminished capacity." Id. Therefore, to the extent Henry argues that the inadmissible defense of diminished capacity was available, the claim fails.
The record shows that the defenses presented by retrial counsel were valid and supported by the evidence. Henry's proposed alternative theory of defense is either unsupported by the evidence (voluntary intoxication) or inadmissible (diminished capacity). Thus, Henry's entire claim amounts to no more than disagreement with retrial counsel's strategy, without offering a valid theory of his own. See Occhicone, 768 So.2d at 1048 (noting that "[c]ounsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions"). Because Henry has failed to establish the first prong of the Strickland, standard (deficient performance of counsel), we need not address the second prong (prejudice). See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").

III. Ineffective Assistance in the Penalty Phase
Henry argues that trial counsel was ineffective for failing to present available mental health mitigation evidence *684 during the penalty phase and that, had counsel presented such evidence, the result probably would have been different. To put this claim in context, we first review the facts in the record.
During the penalty phase of Henry's first trial for the murder of his estranged wife, a forensic psychologist and a psychiatrist (Drs. Berland and Afield) testified on Henry's behalf after conducting psychological testing, interviewing Henry and at least one family member, reading depositions, examining hospital records, and reviewing police reports. Dr. Berland testified that Henry had a low IQ (78) and was "actively psychotic" at the time of the murder. Dr. Afield testified that Henry had a severe problem with alcohol and drug abuse and suffered from long-term, very severe, chronic paranoia. He agreed that Henry was psychotic at the time of the murder, but also said that Henry could distinguish right from wrong. Both doctors testified that two statutory mitigating factors applied: Henry was substantially impaired in his ability to conform his behavior to the requirements of law, and at the time of the offense he was under the influence of an extreme emotional disturbance. Both doctors, however, testified that the cocaine and alcohol use of which Henry had told them was not the basis for their conclusions and that such drug use would only have worsened his psychotic condition.
Despite this testimony, the jury in the first trial unanimously recommended death. The court sentenced Henry to death, finding three aggravatorsprevious conviction of a violent felony (Henry also had stabbed his first wife to death); the murder was heinous, atrocious, and cruel (HAC); and it was cold, calculated, and premeditated (CCP). Despite the defense experts' testimony, the trial court found no mitigating factors. This Court reversed because unfairly prejudicial evidence of Henry's murder of his wife's son was admitted at trial. We noted for retrial purposes that the evidence did not support the trial court's finding of the CCP aggravator. Henry v. State, 574 So.2d 73, 74-75 (Fla. 1991).
Upon retrial, Henry's new defense counsel did not present the mental health experts during the penalty phase. Instead, he presented Henry's girlfriend (Rosa Mae Thomas), with whom he was living at the time of the murder, and her daughter. Henry's girlfriend testified that Henry's estranged wife came to her home on several occasions and argued with Henry. On one occasion, she physically attacked Henry. Police officers arrested her after first having to pull her off him. Thomas was aware of Henry's problems with drugs and alcohol, but said that he was a loving man and a good provider and that they never argued. Thomas's daughter testified that life was pleasant while Henry lived with them, and she was never afraid of him, even though she knew he had killed his first wife. She also described the arguments between Henry and his wife when she came to their home and his wife's violence, to which Henry never responded. She was also aware that Henry smoked crack cocaine while he lived with them.
The jury in the second trial unanimously recommended death, and the court sentenced Henry to death. Henry v. State, 649 So.2d 1366, 1367 (Fla.1994). The court found two aggravating factorsa previous violent felony conviction (killing his first wife) and HACand no mitigating circumstances. Id. at 1367 n. 2.
At the evidentiary hearing on Henry's claim, Dr. Mosman, a forensic psychologist, testified to the mitigating evidence he said was available at the time of trial from his review of the records of the previous mental health experts and other records *685 and from his conversation with Dr. Berland. He opined that the mental health experts should have testified at retrial. Retrial counsel then testified that when he undertook Henry's representation, he obtained and familiarized himself with all the files from the previous trial, including the mental health examinations, reports, depositions, and trial transcripts. He also spoke with the mental health experts. He was aware of the mental health evidence presented in both the prior Pasco County trial and in the prior Hillsborough County trial (for the child's murder), and the result in that case.[3] He was aware of Henry's difficult childhood, his long-time substance abuse, and the problems and violence in his marriage. Counsel specifically chose not to present mental health mitigation through experts because he believed their testimony at the first trial was more devastating than helpful, especially Dr. Afield's testimony that Henry was a very dangerous man. He found that the prosecutor succeeded in essentially turning these witnesses against Henry and said that their testimony was a two-edged sword. He decided instead to present evidence that Henry was a nonviolent, peaceful individual through testimony of people who actually lived in a home with Henry and did not feel threatened by him, and to try to establish some mental-health mitigation through these witnesses and cross-examination.
We have stated that defense counsel's reasonable, strategic decisions do not constitute ineffective assistance if alternative courses have been considered and rejected. State v. Bolender, 503 So.2d 1247, 1250 (Fla.1987). A reasonable, strategic decision is based on informed judgment. See Wiggins v. Smith, ___, U.S. ___, ___, 123 S.Ct. 2527, 2538, 156 L.Ed.2d 471 (2003) (finding counsel's decision "to abandon their [mitigation] investigation at an unreasonable juncture ma[de] a fully informed decision with respect to sentencing strategy impossible"). Accordingly, we determine not whether counsel should have presented mental health mitigation but whether counsel's decision not to present such evidence was a reasonably informed, professional judgment. See id. at 2536 (where petitioner claimed counsel were constitutionally ineffective for failing to investigate and present mitigating evidence, stating "our principal concern ... is not whether counsel should have presented a mitigation case" but "whether the investigation supporting counsel's decision not to introduce mitigating evidence ... was itself reasonable.")[4] The evidence from the evidentiary hearing demonstrates that retrial counsel knew about the mental health testimony available through Drs. Berland and Afield, but concluded that their testimony was likely to do more harm than good. He decided instead to try to humanize Henry through testimony that *686 Henry was a peaceful man through people who actually knew and lived with Henry. Retrial counsel's decision was a reasonable strategy after full consideration of the alternative. See Rutherford v. State, 727 So.2d 216, 223 (Fla.1998) (finding no error where retrial counsel was aware of mental mitigation "but made a strategic decision under the circumstances ... to instead focus on the `humanization' of Rutherford through lay testimony"); Haliburton v. Singletary, 691 So.2d 466, 471 (Fla.1997) (finding no deficient performance in counsel's decision to humanize the defendant rather than use mental health testimony because the expert would say that the defendant was "dangerous" and likely would kill again); Bryan v. Dugger, 641 So.2d 61, 64 (Fla.1994) (finding counsel not ineffective for choosing a mitigation strategy of "humanization" and not calling a mental health expert).
In addition, retrial counsel had the advantage of knowing that the strategy Henry proposes failed at the first trial, where despite the mental health mitigation testimony of the two defense experts, the trial court found no mitigation, and the jury unanimously recommended death. Even considering that the first jury had received a prejudicial amount of information about the murder of the child in the guilt phase and that this Court found the CCP aggravator inapplicable for purposes of retrial, retrial counsel felt that the fact that the first trial court did not find any mitigating factors was telling.[5]
Contrary to Henry's claim, this case is not like Ragsdale v. State, 798 So.2d 713 (Fla.2001), in which we reversed for a new penalty phase upon finding that the defendant's counsel was ineffective for failing to conduct a reasonable investigation into mitigation and thus did not make a strategic decision. Here, counsel neither failed to investigate nor unreasonably limited the investigation of the available mental health mitigation. See Wiggins, 123 S.Ct. at 2543 (concluding counsel could not make a reasonable, strategic choice "because the investigation supporting their choice was unreasonable"). In this case, retrial counsel chose another strategy after investigating and carefully considering the failed alternative. Further, in Ragsdale we held that counsel's failure prejudiced the defendant, stating that "when the evidence which was available is measured against the evidence presented at the penalty phase, there is a reasonable probability of a different result." 798 So.2d at 720. In this case, retrial counsel's decision not to present mental health experts did not prejudice Henry. Despite the presentation of this expert testimony during the penalty phase of the original trial, the trial court did not find one mitigating factor, but it did find two valid statutory aggravators, the same two found upon retrial. See Haliburton, 691 So.2d at 471 ("In light of the substantial, compelling aggravation found by the trial court, there is no reasonable probability that had the mental health expert testified, the outcome would have been different.")

III. The Ring Claim
Finally, Henry argues that this Court should declare the death penalty unconstitutional based on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). As stated previously, the lower court did not permit the late amendment of Henry's postconviction motion; thus, this issue is not properly before us. *687 We note, however, that we have denied relief on similar claims in postconviction motions in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). Furthermore, we have previously rejected this argument in cases involving the aggravating factor of a previous violent felony conviction. See Doorbal v. State, 837 So.2d 940, 963 (CFla.) (stating that prior violent felony aggravator based on contemporaneous crimes charged by indictment and on which defendant was found guilty by unanimous jury "clearly satisfies the mandates of the United States and Florida Constitutions"), cert. denied, ___ U.S. ___, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003); Lugo v. State, 845 So.2d 74, 119 n. 79 (Fla.2003) (noting rejection of Ring claims in postconviction appeals, unanimous guilty verdict on other felonies, and "existence of prior violent felonies"), cert. denied, ___ U.S. ___, 124 S.Ct. 320, 157 L.Ed.2d 216 (2003); accord Duest v. State, 855 So.2d 33 (Fla. 2003); Blackwelder v. State, 851 So.2d 650 (Fla. July 3, 2003). For the foregoing reasons, we affirm the order denying Henry's motion for postconviction relief.
It is so ordered.
WELLS, PARIENTE, LEWIS, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion.
QUINCE, J., recused.
ANSTEAD, C.J., specially concurring.
I concur in the majority opinion in all respects except for its discussion of the issues arising out of the decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). I also acknowledge, however, as stated in the majority opinion, that this Court has previously rejected claims similar to the ones advanced here.
NOTES
[1] After killing his wife, Henry took her five-year old son from her Pasco County home to Hillsborough County, where he killed the child by stabbing him in the throat. On appeal, this Court reversed for new trial. Henry v. State, 574 So.2d 66 (Fla.1991). Henry was again convicted and sentenced to death on retrial, and this Court affirmed on direct appeal. Henry v. State, 649 So.2d 1361 (Fla. 1994), cert. denied, 516 U.S. 830, 116 S.Ct. 101, 133 L.Ed.2d 55 (1995). That case is not part of this appeal from denial of postconviction relief from the Pasco County murder conviction.
[2] Appellant also claimed that counsel was ineffective for failing to seek a change of venue, but later abandoned that claim.
[3] In the first trial in the Hillsborough County Case, the jury recommended death by a vote of 10-2, and the court sentenced Henry accordingly. 574 So.2d at 69. The court found four aggravating factors: (1) previous second-degree murder conviction (Henry's murder of his first wife); (2) the killing was committed in the course of a kidnaping; (3) the killing was committed to avoid or prevent arrest or escape custody; and (4) CCP. Based on Drs. Berland and Afield's testimony, the trial court found two statutory mitigating factors: that Henry was under the influence of extreme mental or emotional disturbance and his capacity to appreciate the criminality of his conduct or conform it to the requirements of law was substantially impaired.
[4] In Wiggins, the Court emphasized that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing"; neither does it "require defense counsel to present mitigating evidence at sentencing in every case." Wiggins, 123 S.Ct. at 2541.
[5] Counsel was further aware that the mental-health mitigation was presented during the penalty phase of Henry's first Hillsborough County trial, and even though the trial court found some mitigating factors, the jury recommended, and the trial court sentenced Henry to, death. 574 So.2d at 67, 69.