[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————————

No. 06-13821

————————————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 27, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00168 CV-T-24TGW

JOHN RUTHELL HENRY,

                                        Petitioner-Appellant,

        versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                        Respondents-Appellees.

————————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————————

**(June 27, 2007)**

Before EDMONDSON, Chief Judge, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Petitioner John Henry ("Petitioner") was convicted of murder and sentenced to death by a Florida court. Petitioner brought this habeas petition in federal district court pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence on the ground that he received ineffective assistance of counsel at the penalty phase and at sentencing. The district court rejected Petitioner's claims and denied relief. Petitioner only appeals the denial of habeas with respect to his counsel's performance at sentencing. We affirm.

## I. BACKGROUND

For purposes of this appeal, these are the undisputed facts. Shortly before Christmas 1985, Petitioner went to Pasco County to speak to his estranged wife Suzanne Henry ("Suzanne"). Before he arrived, he had smoked crack cocaine. The couple began to argue during his visit, and the dispute ended when Petitioner killed Suzanne by stabbing her repeatedly in the throat, at least thirteen times. Petitioner told investigators that Suzanne initially grabbed the knife to stab him; but he overpowered her, secured the knife, and then killed her. Petitioner then took Eugene Christian ("Eugene") -- Suzanne's five-year old son from another

marriage -- to Hillsborough County.  Hours later, Petitioner killed Eugene by repeatedly stabbing him in the throat.

Petitioner was tried and convicted for Suzanne's murder in Pasco County.[1] During the penalty phase, Petitioner's lawyer called psychologist Dr. Berland and psychiatrist Dr. Afield as expert witnesses.  Dr. Berland testified that Petitioner -- who was 40 years old -- had a low IQ (78) and was "actively psychotic."  Dr. Afield testified that Petitioner had severe drug and alcohol problems as well as long-term severe, chronic paranoia.  He also said Petitioner was psychotic but could distinguish between right and wrong.  Together, the doctors testified that two statutory mitigating factors applied: (1) Petitioner was substantially impaired in his ability to conform his behavior to the law; and (2) at the time of the offense, he was under the influence of an extreme emotional disturbance.  But both doctors testified that Petitioner's cocaine use before the murders was not the basis for their conclusions; such drug use would only have worsened his psychotic condition, according to the doctors.

---

[1]Petitioner was convicted and sentenced to death for Eugene's murder in Hillsborough County, but the conviction and sentence were reversed on direct appeal.  Henry v. State, 574 So.2d 66 (Fla. 1991).  On retrial, Petitioner was again convicted and sentenced to death, and the Florida Supreme Court affirmed.  Henry v. State, 649 So.2d 1361 (Fla. 1994).  This appeal does not concern Petitioner's conviction and sentence for the murder of Eugene.

Despite this testimony, the jury unanimously recommended a death sentence. The court sentenced Petitioner to death, finding no mitigating factors and three aggravating factors: (1) previous conviction of a violent felony;[2] (2) the murder was heinous, atrocious, and cruel (HAC); and (3) it was cold, calculated, and premeditated (CCP). The Florida Supreme Court, however, reversed Petitioner's conviction because the trial court improperly admitted prejudicial evidence of Eugene's murder and because the record did not support the CCP factor. Henry v. State, 574 So.2d 73 (Fla. 1991) ("Henry I").

In the retrial, Petitioner was represented by a new attorney: Richard Howard. Notwithstanding Howard's arguments about self-defense and depraved mind, Petitioner was again convicted for capital murder. At sentencing, Howard called lay witnesses -- Petitioner's girlfriend Rosa Mae Thomas and her daughter Stephanie -- to testify that the victim, Suzanne, was a violent and provocative person. In contrast, they viewed Petitioner as a loving, pleasant, and nice man. They also described Petitioner's problems with drug and alcohol use and said his use of cocaine caused him to act paranoid.

---

[2]Ten years before Petitioner's 1985 murder of Suzanne and Eugene, Petitioner was convicted for second degree murder of his first wife, Patty, who he also killed by repeatedly stabbing her in the throat.

4

Howard decided not to call the mental health expert witnesses from the first trial -- Drs. Berland and Afield -- because he thought their testimony would have done more harm than good. Dr. Afield had testified in the first trial that Petitioner was a "very dangerous man." And the jury from the first trial unanimously recommended death despite the mental-health testimony. The State, however, did call its medical experts, who testified (1) that Petitioner was not under the influence of cocaine when he killed Suzanne because the effects would have tapered off by the time of the murder and (2) that he did not qualify for the emotional-disturbance or inability-to-conform-to-the-law mitigating factors.

The jury in the second trial also unanimously recommended death. Accordingly, the court sentenced Petitioner to death, finding no mitigating factors and two aggravating factors: HAC and the previous violent felony. This time, the conviction and sentence were affirmed on appeal. Henry v. State, 649 So.2d 1366 (Fla. 1994), cert. denied, 115 S.Ct. 2591 (1995) ("Henry II"). Petitioner sought post-conviction relief under state law based upon claims of ineffective assistance of counsel at the guilt-innocence and penalty phases. The state courts denied relief. Henry v. State, 862 So.2d 679 (Fla. 2003) ("Henry III").

Petitioner filed this suit under 28 U.S.C. § 2254, also seeking relief for ineffective assistance of counsel. The district court denied relief, and Petitioner

5

only appeals the decision as to his claims on Howard's performance during the penalty phase. Petitioner seeks reversal because Howard failed to call Drs. Afield and Berland, who could have presented additional mitigating evidence to the jury and countered the State's expert testimony.

## II. STANDARD OF REVIEW

In post-conviction matters involving state convictions, we owe the state courts considerable deference. Pursuant to 28 U.S.C. § 2254, federal habeas may be granted for a claim adjudicated on the merits in state court if the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Factual findings are presumed correct unless rebutted by clear and convincing evidence. Id. § 2254(e)(1).

Under § 2254(d)(1), a federal court may grant habeas relief "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme]

Court has on a set of materially indistinguishable facts." Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000). Under § 2254(d)(2), a court may grant the writ if the state court correctly identifies the governing legal principle but applies that principle unreasonably to the facts of the prisoner's case. Id.

## III. DISCUSSION

To prevail on an ineffective assistance of counsel claim, the petitioner must prove both incompetence and prejudice by showing that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 104 S. Ct. 2052, 2064, 2068 (1984). Petitioner has not shown that Howard's performance was unreasonable or prejudicial.

When Howard undertook Petitioner's representation for the retrial, he had the benefit of knowing what happened in Petitioner's first trial. He had access to all the files and the record. He knew about the medical examinations and Dr Afield's and Dr. Berland's reports, depositions, and trial testimony. Howard knew that Dr. Afield told the first jury that he thought Petitioner was a very dangerous

7

man. And he knew that despite the doctors' testimony, the jury unanimously recommended the death sentence and that the trial court found no mitigating factors at sentencing.

With the benefit of such information, Howard chose not to present Drs. Afield and Berland as expert witnesses in the retrial because he felt their testimony would not be helpful and could be harmful. Instead, he chose a different strategy to establish mitigating factors. Howard thought Petitioner might have more success at sentencing if people who knew him -- his girlfriend Rosa Mae and her daughter Stephanie -- could testify about his nonviolent and nice behavior; in other words, their testimony could "humanize" Petitioner in front of the jury. Also, they could testify about the violent nature of the victim.

Especially in the light of what happened at Petitioner's first trial, we accept the Florida courts' conclusion that Howard's sentencing strategy in the retrial was reasonable: Howard's decision to call Rosa and her daughter Stephanie -- but not the doctors -- to establish mitigating evidence was within the range of sound representation.[3] See Haliburton v. Sec'y for Dept. of Corr., 342 F.3d 1233, 1244-

---

[3]Petitioner contends that every competent lawyer would have called the doctors as witnesses because their testimony supported three mitigating factors: (1) extreme emotional disturbance under Fla. Stat. § 921.141(6)(b); (2) inability to conform conduct to the law under § 921.141(6)(f); and (3) young age under § 921.141(6)(g). We disagree. The first two mitigation arguments were advanced in Petitioner's first trial, yet they proved unsuccessful: no mitigating facts were found. The "mental age" mitigator was never advanced, but when it was raised in Petitioner's state post-conviction

8

45 (11th Cir. 2003) (concluding that counsel's decision to humanize the defendant through lay testimony rather than call a mental health expert who might have hurt the defense was not deficient performance). We recognize that the State presented expert witnesses at sentencing and that Howard could have called Drs. Afield and Berland to counter the State's experts. But because a defense lawyer could have reasonably believed the testimony was potentially too harmful, Howard was not required to call the doctors. See Stevens v. Zant, 968 F.2d 1076, 1083 (11th Cir. 1992) (concluding counsel was not deficient in failing to call clinical psychologist during sentencing because counsel thought the testimony was potentially harmful). Petitioner has not shown his sentence would have likely been different from the sentence he received -- either the death sentence from his first trial or the death sentence from his retrial -- had Howard actually called the doctors to testify.

---

proceedings, Howard testified he did not believe the argument was sound. Although Dr. Bill Mosman opined in a post-conviction hearing that Petitioner's mental age was 13 or 14, Howard "vigorously disagree[d]." Howard testified that Petitioner was able to discuss and understand adult concepts much better than a 13 year old child. He also testified that even if this theory could have "possibly worked," it would not have been in Petitioner's best interest because the doctors' testimony would have hurt his case. We cannot say that the state courts were obliged to conclude that Howard was ineffective for failing to advance this line of argument.

## IV. CONCLUSION

The highest state court's judgment must be given considerable deference. The district court properly denied Henry's 28 U.S.C. § 2254 petition.

AFFIRMED.