# Supreme Court of Florida

_____

No. SC14-1053
_____

**JOHN RUTHELL HENRY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[June 12, 2014]
**<u>CORRECTED OPINION</u>**

PER CURIAM.

John Ruthell Henry is a prisoner under sentence of death for whom a warrant has been signed setting execution for June 18, 2014. Henry appeals from the dismissal of his Motion for Determination of Intellectual Disability as a Bar to Execution. This Court has jurisdiction under article V, section 3(b)(1), Florida Constitution. For the reasons explained below, we affirm the postconviction court's order dismissing Henry's motion.

## I. BACKGROUND

Henry was convicted of the 1985 first-degree murder of his second wife, Suzanne Henry, in Pasco County. On Henry's first direct appeal, this Court

reversed and remanded Henry's case for a new trial. Henry v. State, 574 So. 2d 73 (Fla. 1991). The evidence showed that shortly before Christmas in 1985, Henry went to his estranged wife's home in Pasco County to discuss Christmas presents for her son Eugene Christian. Id. at 74. They argued, and Henry stabbed Suzanne Henry in the neck thirteen times, killing her. Henry v. State, 649 So. 2d 1366, 1369 (Fla. 1994). On retrial in 1991, Henry was again convicted of first-degree murder, and the jury unanimously recommended a sentence of death. Id. at 1367. The trial court sentenced him to death, finding two aggravating factors: (1) Henry had a prior violent felony conviction (Henry murdered his first wife and pleaded guilty to second-degree murder), and (2) the murder was heinous, atrocious, or cruel (HAC). Id. at n.2. The trial court found no mitigation. Id.[1]

On direct appeal following his retrial, Henry raised the following issues: (1) the trial court erred in admitting testimony regarding the murder of Eugene Christian; (2) the trial court erred by admitting the hearsay testimony of an unavailable witness during the penalty phase related to the murder of his first wife; (3) the trial court erred by admitting testimony regarding the autopsy report from

---

1. In a separate trial, Henry was also convicted and sentenced to death for the murder of Suzanne Henry's five-year-old son Eugene Christian in Hillsborough County. Henry v. State, 574 So. 2d 66 (Fla. 1991) (reversing and remanding for new trial for murder of stepson Eugene Christian). On retrial, Henry was again convicted and sentenced to death for the murder of Eugene Christian, and this Court affirmed. Henry v. State, 649 So. 2d 1361 (Fla. 1994). The death warrant in this case is for the murder of Suzanne Henry.

his prior murder conviction for killing his first wife to establish the prior violent felony aggravator; (4) the trial court erred by instructing on the murder-in-the-course-of-a-felony aggravator because the court did not find the aggravator; (5) the trial court failed to properly consider all mitigating evidence presented; (6) the HAC aggravator was not supported by the evidence; and (7) the death sentence was disproportionate. Id. at 1367-70. This Court affirmed Henry's conviction and sentence, concluding that the claims either lacked merit or—despite their merit—constituted harmless error. Id.

In March 2001, Henry filed an amended initial motion for postconviction relief. An evidentiary hearing was held in November 2001, after which the postconviction court denied relief. Henry appealed, raising the following issues: retrial counsel provided constitutionally ineffective assistance at trial by presenting the defenses of self-defense and diminished capacity and for failing to present a voluntary intoxication defense; counsel was ineffective for failing to present mental health experts at retrial; and Florida's death penalty is unconstitutional under Ring v. Arizona, 536 U.S. 584 (2002). Henry v. State, 862 So. 2d 679 (Fla. 2003). This Court affirmed the postconviction court's order denying postconviction relief. Id. at 680.

In 2004, Henry filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Florida, and subsequently appealed

the denial of his claim that counsel was ineffective for failing to present mental health experts to testify in the retrial penalty phase. Henry v. Sec'y, Dep't of Corr., 490 F.3d 835, 836 (11th Cir. 2007). On appeal, the Eleventh Circuit Court of Appeals agreed with this Court's determination that trial counsel's strategy was reasonable, and Henry could not demonstrate prejudice. Id. at 839. Accordingly, the court affirmed the denial of Henry's habeas petition. Id.

On May 2, 2014, Governor Rick Scott signed a death warrant for John Ruthell Henry with an execution date of June 18, 2014. At a hearing in the circuit court, defense counsel, with Henry's approval, waived judicial postconviction proceedings and announced the intent to pursue a determination of Henry's competency under section 922.07, Florida Statutes (2013). Under this statute, the Governor appoints three experts to examine the defendant to determine "whether [the convicted person] understands the nature and effect of the death penalty and why it is to be imposed upon him or her." § 922.07(1), Fla. Stat. (2013). Subsequently, postconviction counsel formally requested the competency proceeding, and the Governor appointed three experts to examine Henry. After the examination, the experts reported their opinion on May 16, 2014, that—within a reasonable degree of medical certainty—Henry does not suffer from a psychiatric illness or intellectual disability and understands the nature and effect of the death penalty and why the sentence had been imposed on him.

Subsequently, Henry filed a Motion for Determination of Intellectual Disability as a Bar to Execution. The circuit court dismissed the motion as untimely, and Henry appealed the dismissal to this Court.

## II. ANALYSIS

In this appeal, Henry asserts that he is entitled to an evaluation to determine whether he is intellectually disabled. See § 921.137, Fla. Stat. (2013); Fla. R. Crim. P. 3.203. He bases his claim on the Supreme Court's recent decision in Hall v. Florida, 134 S. Ct. 1986 (2014), and his performance in 1987 on the Weschler Adult Intelligence Scale (WAIS) that demonstrated that he had an IQ of 78. Accordingly, Henry argues that the postconviction court erred in dismissing his claim of intellectual disability. We disagree.

Henry is not entitled to an evidentiary hearing to determine if he is intellectually disabled. Section 921.137(1) provides that intellectual disability means "significantly subaverage general intellectual functioning, existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18." Beyond Henry's assertion of a single test score, he has not alleged any deficits in adaptive functioning or onset prior to age 18. Indeed, having examined the record in this cause, we agree with the State that not one doctor over all the years of litigation has ever opined that Henry was mentally retarded or intellectually disabled. Moreover, three doctors recently evaluated

- 5 -

Henry to determine his competency under section 922.07 and concluded as follows:

> Mr. Henry was fully oriented and his memory and concentration were intact. His clinical presentation during the evaluation was consistent with intellectual functioning at or above what would be predicted based on his prior IQ test result of 78 (7th percentile). For instance, he was able to discuss the legal process accurately in reasonable depth. Moreover, he correctly serially subtracted seven from 100 on four of five steps (100-93-79-73-56).
>
> Mr. Henry was administered the Mini-Mental State Examination-2, a neuropsychiatric test used to assess for cognitive impairment. It covers the areas of orientation, attention, calculation ability, recall (recent memory), naming, repetition, comprehension, reading, writing, and visual-spatial skills. Mr. Henry scored a 25/30 (T score-51; 54th percentile), in the average range per age group and educational level norms.
>
> The nature and effect of the death penalty and why it is to be imposed on him was discussed with Mr. Henry. He communicated that he had been tried for and convicted of first degree murder and his sentence was the death penalty. Additionally, he noted that his victims were his wife and stepson. He provided the general facts surrounding their deaths. In his words, the execution is carried out by "lethal injection," "a shot," and is to occur on June 18th at 6:00 p.m.
>
> In summary, based on our clinical interview, review of records, and interviews with two correctional officers, it is our opinion with reasonable medical certainty that: (1) Mr. Henry does not suffer from any DSM-5 psychiatric illness or intellectual disability (formerly referred to as mental retardation in DSM-IV), and (2) understands the nature and effect of the death penalty and why it is to be imposed on him.

Letter from Dr. Wade C. Myers, M.D., Dr. Donald Taylor, M.D., and Tonia Werner, M.D., to Rick Scott, Governor of Florida (dated May 16, 2014) (Henry mental competency determination). Although this evaluation was for mental

competency—not intellectual disability—the observations and conclusions further support our determination that Henry has not established any facts that would entitle him to relief under <u>Hall</u>.

Finally, we consider that, rather than showing deficits in adaptive functioning, the record demonstrates the opposite. As the State points out in its Answer Brief, the record demonstrates that Henry engaged in typical, adult activities. Henry was able to drive a car, develop personal relationships, participate in financial transactions, discuss adult concepts, and engage in goal-directed behavior. In addition, his pro se pleadings and his oral advocacy further refute any claim that he has concurrent deficits in adaptive functioning or onset before age 18. They demonstrate Henry's effective communication skills, both oral and written, and his understanding of the law. Answer Brief at 24. In its Answer Brief, at 9-10, the State provides an example of Henry's pro se advocacy at his first trial, when he moved for appointment of new counsel, as follows:

> MR. HENRY: Good morning. Yeah, I would like to bring it to the Court's attention that as of this moment I feel I am not properly being represented and I wish to ask the Court to remove Mr. Focht from being my attorney and I would like to be, if it's possible, to be recommended to another attorney because I feel that there's things that's not being brought to the Court's attention concerning me that he's not bringing up, going into details concerning witnesses in my behalf. Some of the witnesses have not brought forward that I felt that would have came forward if it had been brought to their attention.
>
> Also, there's things that haven't been brought up that I have requested my attorney to bring up that he have failed to bring up and I

- 7 -

feel that, also, in this case, that it being partiality shown towards the victim. My main concern is that myself and Mr. Focht, the things that I have requested of him to bring up and he just haven't. And I just feel like I'm not being properly represented.

In light of the foregoing, we affirm the dismissal of Henry's claim on the basis that Henry has not demonstrated a facially sufficient claim of intellectual disability.

No motion for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

POLSTON, C.J., and PARIENTE, CANADY, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result.
QUINCE, J., recused.

An Appeal from the Circuit Court in and for Pasco County,
    Pat Edward Siracusa, Jr., Judge - Case No. 1985-CF-2685

Baya Harrison, III, Monticello, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Candance M. Sabella, Chief-Assistant Attorney General, Capital Appeals Bureau Chief, and Carol M. Dittmar, Senior Assistant Attorney General, Tampa, Florida,

    for Appellee