**Michael Mark MORGAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 90–SC–236–MR.**

Supreme Court of Kentucky.

April 11, 1991.

Rehearing Denied July 3, 1991.

Don H. Major, Major & Vanarsdale, Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Valerie L. Salven, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

LAMBERT, Justice.

In this matter of right appeal we will review two of the three issues presented by appellant wherein he claims to have been the victim of prejudicial error. Appellant's third issue concerns his claim of entitlement to a directed verdict, a claim we believe to be without substantial merit.

The issues identified by appellant are whether the trial court erred in failing to grant his motion for mistrial after a prosecution witness mentioned that a polygraph machine was located in the room where appellant was interrogated, and whether the trial court erred in failing to suppress appellant's statements to the police.

Appellant was convicted of murdering his wife, Gretchen Morgan, and sentenced to thirty-eight years in prison. Gretchen Morgan died as a result of twenty-four stab wounds to her back. There were no defensive wounds. There was little physical evidence of a probative nature and the Commonwealth's case was based largely on motive (appellant was having an affair with another woman), opportunity and statements made by appellant in the course of a prolonged police interrogation in which he said he "hurt" Gretchen. Apart from appellant's inculpatory statements, it is doubtful that the Commonwealth could have survived a motion for directed verdict and at oral argument, counsel for the Commonwealth admitted there would have been no prosecution but for the statements. While it is not our role to evaluate evidence, this was clearly a close case.

In response to appellant's call, the police arrived at the crime scene at approximately 6:30 P.M. Appellant was present and after the police had made a preliminary investigation, appellant agreed to accompany Detective Wesley to the police station to give a statement. Beginning at about 9:30 P.M. and continuing for some forty-five minutes, appellant gave a tape-recorded statement which the parties agree was wholly exculpatory. After this statement was concluded, the police obtained appellant's agreement to take a polygraph examination. The polygraph examiner, Sergeant Howard, was called and the examination began at approximately midnight. The polygraph examination, which Sergeant Howard believed appellant failed, and post-polygraph interrogation by Sergeant Howard lasted until about 3:15 A.M. At that time and not in response to a question, appellant told Sergeant Howard that he "hurt" Gretchen. Sergeant Howard informed Detective Wesley of this admission and at 3:50 A.M., a second taped statement was taken from appellant in which he made a similar admission.

At trial, both of appellant's tape-recorded statements were presented to the jury. In addition, Sergeant Howard, a twenty-year police veteran, testified as to the substance of appellant's oral statement, but did not directly disclose that a polygraph examination had been administered.

In presenting its evidence, including appellant's statements, the Commonwealth was concerned that appellant would attempt to dwell on the substantial period of time consumed by the polygraph procedure and unaccounted for to the jury to suggest coercion. As appellant's first incriminating statement was not made until 3:15 A.M., after appellant had been subject to police interrogation for approximately eight hours, the police believed that appellant would attack the integrity of his own statements. It was necessary, therefore, for the police to account for the time without disclosing that a polygraph examination had been given. To accomplish this, counsel for the parties and the court constructed a charade whereby Sergeant Howard, the polygraph examiner, would be presented as a police officer who possessed "special interrogation skills." By this means, the jury would be informed that Sergeant Howard was called in to assist in the interrogation and he would be permitted to disclose appellant's incriminating statement made to him. Prior to his testimony, Sergeant Howard had been informed of the agreed-upon means of avoiding any reference to the polygraph examination and instructed to refrain from any mention of it.

Just as the police had suspected, on cross-examination of Sergeant Howard, appellant attempted to minimize the signifi-

cance of his statement by showing the surrounding circumstances. *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Appellant's counsel asked Sergeant Howard if there was a two-way mirror in the room where he interrogated appellant. Instead of answering the question directly, Sergeant Howard obligingly asked counsel if he wanted him to describe the room. The Commonwealth's Attorney, sensing danger, asked to approach the bench and informed the court that the question might elicit a response which included a reference to the polygraph. The Commonwealth asked the trial court to require appellant's counsel to withdraw the question. The trial court refused this request, but stated emphatically that if polygraph was mentioned, everybody was going home, meaning we assume, that a mistrial would be declared. Upon conclusion of the bench conference, appellant's counsel asked Sergeant Howard to proceed with his description of the room. Sergeant Howard, who had not participated in the bench conference, replied that the "room has a desk, it has a polygraph instrument on top of the desk, it has two chairs, painted a pleasant color, has a two-way mirror in the room." Appellant moved for a mistrial and the motion was overruled.

The decisions of this Court are clear that the results of polygraph examinations are unreliable and are therefore inadmissible in evidence. *Stallings v. Commonwealth*, Ky., 556 S.W.2d 4 (1977). *Baril v. Commonwealth*, Ky., 612 S.W.2d 739 (1981). *Henderson v. Commonwealth*, Ky., 507 S.W.2d 454 (1974). Because of the peculiar nature of polygraph examination, however, and its inherent propensity to influence the jury, we have gone further and held that the mere mention of the taking of a polygraph examination without disclosure of the result is likewise error. *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984). *Perry v. Commonwealth*, Ky., 652 S.W.2d 655 (1983).

The question presented in this case requires us to examine the next step and determine whether the mere disclosure that an interrogation took place in a room containing a polygraph instrument was error, and if so, whether it requires reversal. To answer the question presented, it is necessary to consider it in the context of this case and our decision should not be regarded as announcement of a bright line rule.

In context, we believe Sergeant Howard's telling the jury that the interrogation took place in a room with a polygraph instrument amounted to a virtual banner headline that appellant had been given a polygraph examination. It should be recalled that Sergeant Howard was described as an officer with "special interrogation skills" and one must wonder what the jury thought those skills were. If the conclusion had not occurred to the jury until then, with the mention of the word "polygraph," the clouds must have parted and the sun shone through. We are persuaded that the description of Sergeant Howard's skills, coupled with the disclosure of appellant's interrogation in a room containing a polygraph instrument, led straightaway to the conclusion that a polygraph examination was given.

The Commonwealth relies on this Court's decision in *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984), *cert. denied* 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 in which we held an indefinite, ambiguous reference to "polygraph examiner" was not prejudicial error. We noted that there was no statement that any such test had been administered and that it was vague as to whom, if anyone, it had been administered. We said, "There must arise a clear inference that there was a result and that the result was favorable, or some other manner in which the inference could be deemed prejudicial." *Id.* at 522. Unlike *McQueen*, there could be no doubt here that if a polygraph examination was given, it was given to appellant. Moreover, and as earlier stated, the facts are ample to create a "clear inference" that a test was given. After such an inference was created, the subsequent failure to inform the jury of any result brought about an additional inference that appellant failed the test.

For the purpose of our decision, it is unnecessary to determine whether Sergeant Howard's mention of "polygraph instrument" was willful. Nevertheless, it strains our credulity to believe that a twenty-year police veteran who was trained as a polygraph examiner, and had testified in numerous criminal trials, would not know, particularly when he had been told to refrain from any such reference, that any mention of the word "polygraph" or "polygraph instrument" would imperil the result achieved at trial.

We have previously indicated our view that an inference arose that appellant took and failed a polygraph examination. If the evidence of guilt was otherwise compelling, we would undertake a thorough harmless error analysis. CR 61.01. We have previously said, however, that such was not the case here. While the Commonwealth's evidence of appellant's guilt, if believed, was sufficient to sustain the verdict, it was far from overwhelming. As such, we are unable to conclude that the polygraph error was harmless. Reversal for a new trial is required.

By pretrial motion, appellant sought suppression of his statements made to the police in the early morning hours and after the polygraph examination. Testimony at the suppression hearing consisting of more than six hours was heard and the witnesses included Detective Wesley, Detective Collard, Sergeant Howard, the appellant, and Dr. Lawrence Green, a psychiatrist retained by appellant. The grounds claimed for suppression were "not that the statements were coerced by the police, but that all of the circumstances, including the inhumanely prolonged questioning, created a mental state in the appellant so that his volitional competency or mental capacity was so impaired as to render the statements untrustworthy and thus inadmissible."

As we understand it, appellant does not claim coercion; instead, he claims to have suffered from diminished capacity at the time his statement was given. For this contention, appellant relies primarily on the testimony of Dr. Green.

Dr. Green's testimony falls short of compelling a finding that appellant lacked the capacity to make a rational decision at the time he gave the incriminating statements to the police. While he did render such an opinion based on a hypothetical question containing facts contended by appellant, he was unable to say more than that appellant suffered from "some degree of diminished capacity." The testimony of the other witnesses given at the suppression hearing, including appellant's own testimony, detracts from the opinion rendered by Dr. Green.

The trial court prepared and entered an order in which the evidence presented was fully considered. The trial court considered the effect of KRS 422.110 upon the statements made by appellant and concluded that due process of law and the statutory provision required a determination based upon the "totality of the circumstances." *Allee v. Commonwealth,* Ky., 454 S.W.2d 336 (1970). *See also McCall v. Dutton,* 863 F.2d 454 (6th Cir.1988), which defines the requirements of federal due process. The trial court concluded that "the actions of the police toward Mr. Morgan were not coercive, nor were their actions violative of KRS 422.110. The totality of the circumstances suggests to the court that the defendant's confession was voluntary for due process purposes." The trial court also said, "The court finds and concludes that the defendant's mental capacity was such that he was not precluded from giving a voluntary statement."

█ RCr 9.78 governs motions to suppress confessions and searches. By the provisions of the rule, factual findings of the trial court are conclusive if supported by substantial evidence. While the duration of appellant's interrogation may have exceeded that which some would consider reasonable, evidence was presented from which the trial court could have believed, and clearly did believe, that appellant retained the capacity to make rational decisions and was not coerced into making the incriminating statements.

Appellant's reliance on *Tabor v. Commonwealth,* Ky., 613 S.W.2d 133 (1981),

except as to allocation of the evidentiary burden, is misplaced. In *Tabor*, only the appellant and a witness on his behalf gave testimony. In this case, there was ample testimony from a variety of sources which permitted the trial court to fully determine the facts.

■ Our determination that the trial court's ruling as to admissibility of the challenged statements was supported by substantial evidence does not foreclose appellant from attacking his statements under the principles set forth in *Crane v. Kentucky, supra*. Appellant is entitled to present his contention that the statements convey a different meaning than their facial interpretation and such evidence may be highly relevant to the reliability and credibility of the statements. Evidence relating to the circumstances surrounding the statements alleged to be incriminating may be indispensable to appellant's right to present a defense to the crime charged.

For the reasons set forth herein, we reverse on the polygraph issue and affirm as to the admissibility of appellant's statements. This cause is remanded to the Jefferson Circuit Court for further proceedings not inconsistent herewith.

STEPHENS, C.J., and COMBS and LEIBSON, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which REYNOLDS and SPAIN, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from that part of the majority opinion which reverses this case because the use of the word "polygraph" once during a four-day trial in which there was no mention of the test results or whether a test had been given, did not require the granting of a mistrial or reversal.

At the beginning of the trial, defense counsel made a motion in limine indicating his understanding that the prosecution witnesses would be admonished not to mention a "lie detector test" or in any way implying that one was given. The Commonwealth acknowledged the general inadmissibility of polygraph tests but reserved the right to argue regarding the length of the period of interrogation depending on how cross-examination develops. During cross-examination, the polygraph examiner was asked where Morgan was physically located during the two hour and 45 minute interrogation. The officer explained that he and Morgan were sitting in an office alone talking. Defense counsel then asked whether there was a two-way mirror in the office and at this point, the officer asked the defense lawyer if he would like him to describe the entire office and everything in it. Defense counsel responded "Please. Describe it." At this point, one of the prosecutors asked to approach the bench to discuss the problem of a possible polygraph statement and requested that the defense withdraw the question. The request to withdraw the question was denied.

Back before the jury, defense counsel again asked the police officer to proceed with describing the room. The police officer witness had not participated in the bench conference and replied that the room had a desk, a polygraph instrument on top of the desk, two chairs and a two-way mirror and that it was painted a pleasant color. Defense counsel then approached the bench and asked "What do you think? I didn't think he'd do that." The prosecution noted that the witness did not say the polygraph machine was in operation and the trial judge stated that he was going to continue. Defense counsel immediately moved for a mistrial which was denied by the court. The trial judge said that in light of the circumstances under which the word "polygraph" was used, there was no harm. No admonition to the jury was requested or given.

The trial court did not err by refusing to grant a mistrial when a prosecution witness stated on cross-examination that there was a polygraph machine in the room used for questioning Morgan. The mere mention of the word "polygraph" is not always fatal. There must be a clear inference that the statement could be deemed prejudicial. *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984). In this case, it was

agreed prior to the testimony that the prosecution witness, a polygraph examiner, would be referred to as an individual with special interrogation skills. It was also agreed there would be no mention of the word "polygraph."

The only reference to the polygraph was the statement that a polygraph machine was in the room. There was no mention of a test being administered or any result. The answer given by the witness was also in direct response to a question asked by the defense attorney.

It cannot be said that a single reference to a polygraph machine automatically requires the granting of a mistrial. There was no manifest, urgent or real necessity to declare a mistrial. *Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672 (1985). In light of the second taped statement in which Morgan admitted to hurting his wife any error in allowing mention of a polygraph machine was harmless. RCr 9.24.

The majority opinion asserts that this case requires this Court to go a step further and determine whether the mere disclosure that interrogation took place in a room containing a polygraph instrument was reversible error. I believe that under the circumstances of this case, there was no error and that the majority has gone a step too far. The majority says that this decision should not be regarded as a bright-line rule. In my view that is internally and inherently inconsistent. The opinions of this Court are considered carefully by courts, prosecutors and defense lawyers. It is either express legal authority or it is not. It cannot be both ways.

A review of the law in the federal and other states indicates that no other jurisdiction has adopted such an expansion of the suppression of polygraph doctrine. An excellent discussion of the entire situation which is very close to this case may be found in *United States v. Hall*, 805 F.2d 1410 (10th Cir.1986). In that case, the trial judge told the defense that polygraph results would be relevant if the defense attacked the quality of the official investigation. The trial judge gave a limiting admonition regarding the use of the evidence.

*Hall, supra*, discusses several similar cases including *Tyler v. United States*, 193 F.2d 24 (D.C.Cir.1951), cert. denied, 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326. In *Tyler, supra*, the defendant contended that his confession was the result of coercion and the police were not allowed to testify that a lie detector examination showed that the defendant had been lying. The testimony was admitted not as proof of lying but to show the surrounding circumstances.

The mere mention that a polygraph instrument was in the room where Morgan was being questioned was not reversible error. The totality of the actual circumstances must be considered. The fact that this was a four-day trial and that the single mention occurred during cross-examination, in addition to the fact that the prosecution sought to avoid it by asking that the question be withdrawn, all have a bearing on the responsibility of the reviewing court in its determination of reversible error.

*United States v. Herrera*, 832 F.2d 833 (4th Cir.1987), found that single reference to a polygraph contained in a plea agreement was harmless error. *U.S. v. Kiszewski*, 877 F.2d 210 (2nd Cir.1989) reached a similar conclusion.

In this situation, we have an experienced police officer being questioned by an experienced defense lawyer. The officer was not party to the bench conference and previous questions from defense counsel had related to the total length of time that Morgan had been questioned. It would not have been an unreasonable defense strategy to have tried to demonstrate some kind of police coercion. *United States v. Bad Cob*, 560 F.2d 877 (8th Cir.1977) found that there was a possible strategic reason for failing to object and that references that the defendant refused to take a lie detector test were not reversible. *See also United States v. Kampiles*, 609 F.2d 1233 (7th Cir.1979).

In addition, other state courts have not adopted a rule requiring an automatic mistrial or reversal of a conviction because of the mere mention of the word "polygraph" during trial. All of the actual circum-

stances surrounding the reference at a trial must be taken into account. *Stewart v. State*, 398 So.2d 369, 374 (Ala.Cr.App., 1981) affirming a conviction, determined that the reference merely related to the location of the defendant's conversation with the detective and did not indicate that a lie detector test had been given or disclosed its results.

*Hansborough v. State*, 509 So.2d 1081 (Fla.,1987) refused to hold that the mere mention of a polygraph examination was necessarily reversible error. For similar results see *Nave v. State*, 171 Ga.App. 165, 318 S.E.2d 753 (1984); *State v. Kosters*, 175 Mich.App. 748, 438 N.W.2d 651 (1989); *State v. Fenney*, 448 N.W.2d 54 (Minn. 1989); *State v. Beach*, 215 Neb. 213, 337 N.W.2d 772 (1983); *Epperly v. Commonwealth*, 224 Va. 214, 294 S.E.2d 882 (1982); *State v. Land*, 681 S.W.2d 589 (Tenn.Cr. App.1984).

Here the majority assumes that the jury would have been influenced or even perhaps prejudiced because of the mere mention of the word "polygraph." The majority speculates on what the jury thought in regard to an earlier reference to special interrogation skills. If we wander into the wonderland of jury psychoanalysis, then it may be permissible to further speculate that the jury thought nothing at all about the polygraph reference. In fact perhaps the jury did not even understand what the definition of the word "polygraph" meant. Further speculation may revolve around an experienced police officer being questioned by an experienced defense counsel. In dissent, we do not adopt any theory of speculation but merely recite it to indicate that once you begin speculation there can be no end to it. The result of such speculation leads directly to a substitution by the reviewing court of its judgment for that of the trial judge. The trial judge did not believe that this momentary reference to polygraph amounted to grounds for a mistrial. The defense counsel did not even ask for an admonition. The trial judge is in a unique position to best assess the impact of such a statement on the jury. I believe his decision should not be disturbed.

In the context of this case, the mere mention of the location of a polygraph instrument did not amount to reversible error. The conviction should be upheld in all respects.

REYNOLDS and SPAIN, JJ., join in this dissent.