John Earl BROWN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 93–SC–186–MR.

Supreme Court of Kentucky.

Feb. 16, 1995.

Michael M. Losavio, Louisville, for appellant.

Chris Gorman, Atty. Gen., Gregory C. Fuchs, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

LAMBERT, Justice.

Appellant, John Earl Brown, was convicted in the Jefferson Circuit Court of three counts of kidnapping and of one count of robbery in the second degree, with enhancement as a persistent felony offender in the second degree. Appellant was sentenced to a total of forty-two years and appeals as a matter of right.

In the early morning hours of March 22, 1992, Anthony Sanders, manager of a Louisville Shoney's Restaurant, closed the restaurant and proceeded toward making the nightly deposit at a nearby bank. Accompanying Sanders were three employees, one of whom was taken home on the way to the bank. On reaching the bank, as Sanders opened the night depository, he was accosted by a man who told him, "look what I've got", indicating that he was armed. The man took the money bag from Sanders and ordered him back to the car where he told all three occupants to put their heads between their legs. After driving the car for a few minutes, the assailant ordered all three victims out of the car and onto the ground. Sanders and another employee were hand-cuffed together and then placed with the remaining employee in

the trunk of Sanders' car. The robber then demanded the restaurant safe combination from Sanders, which was provided, and Sanders was told that if the combination was incorrect, he would put a hole in him when he returned. The man then touched a stun gun to Sanders leg causing great pain and agony. The assailant returned in half an hour and unlocked the trunk after which the three victims waited twenty seconds as instructed and then sought help.

During the course of the investigation, two anonymous telephone calls were received by Sanders. One threatened harm if Sanders spoke further about the robbery and the other implicated Brown as the perpetrator. From that point forward, the police focused their investigation on appellant and his cousin, Aaron King, another Shoney's manager. After several conversations with the police, King admitted that appellant had given him $1,000 to remain silent about the robbery and that appellant had confessed to committing the crimes. King then pled guilty in accordance with *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1971).

At trial, appellant was convicted of three counts of kidnapping, one count of second degree robbery, and as a second degree persistent felony offender for which he was sentenced to forty-two years imprisonment. On appeal appellant claims several instances of reversible error.

## I. HEARSAY EVIDENCE

At trial, the prosecution elicited testimony from Anthony Sanders and from a police detective concerning the two anonymous telephone calls. The first telephone call was made to Sanders two days after the robbery. The caller threatened to harm Sanders' family if he spoke further with the police. In a second call Sanders received two weeks later, a female voice identified Brown as the assailant and provided his address. During the introduction of testimony regarding the telephone conversations, defense counsel made contemporaneous objections on the basis of inadmissible hearsay evidence. The Commonwealth originally argued that such statements were admissible as "investigative hearsay", but retreated to the contention

that the jury should be informed of the procedure by which appellant became the focus of the investigation. On this basis, the trial court allowed the testimony but admonished the jury that the evidence was not being admitted for the truth of the matters asserted, but to show what was done in the course of the police investigation.

■ Appellant claims that the admission of hearsay testimony disclosing the substance of anonymous telephone conversations by which he was implicated violated his due process rights under the Sixth Amendment to the United States Constitution, and Section Eleven of the Constitution of Kentucky. As we have so held in *Hughes v. Commonwealth*, Ky., 730 S.W.2d 934 (1987), we agree with appellant's contention. *Hughes* explains that such statements are unreliable, not subject to cross-examination, and may be motivated by malice. The Commonwealth's contention that the evidence was admitted to show the course of the police investigation was held to be insufficient in *Hughes* and the trial court's admonition here with respect to its reason for admitting the evidence was insufficient to cure the prejudicial impact. By virtue of the substance and implications of the anonymous telephone conversations, and the complete denial of appellant's right of confrontation with respect to the anonymous statements, we must reverse for a new trial.

## II. KIDNAPPING

■ Under the kidnapping exemption statute, restraint which is necessarily incident to the intended crime does not constitute a separate crime of kidnapping. KRS 509.050. Appellant was convicted of three counts of kidnapping arising from driving the three victims in the car at gun point and eventually placing all three in a locked trunk under threat of violence for over one-half hour. Appellant now contends that the intentional crime of robbery should invoke the exemption statute as the confinement arose during the course of the robbery.

Such an argument is utterly without merit under the facts presented. To have benefit of the statute,

"the restraint will have to be close in distance and brief in time. . . . If the victim is restrained and transported any substantial distance to or from the place at which the crime is committed or to be committed, the offender will be guilty of an unlawful imprisonment offense as well."

*Timmons v. Commonwealth,* Ky., 555 S.W.2d 234, 241 (1977). There was no error in the trial court's denial of appellant's motion for directed verdict on the kidnapping charges.

## III. POLYGRAPH

During his testimony, witness Aaron King spontaneously stated that the police had "ask[ed] me to take a polygraph—oh god!" King's exclamation arose from the realization that he had been instructed not to mention his polygraph test. Defense counsel immediately moved for a mistrial.

In *Morgan v. Commonwealth,* Ky., 809 S.W.2d 704 (1991), we found prejudicial error in the admission of testimony concerning a possible polygraph examination of the defendant. However, *Morgan* declared that "[i]f the evidence of guilt was otherwise compelling, we would undertake a thorough harmless error analysis. CR 61.01." *Id.* at 707. In the present case, the inadvertent polygraph reference was made by a witness, with no indication whether a test was given or of the outcome of the test. Because the repetition of this statement at any future retrial is unlikely, we need not determine whether such a statement rose to the level of reversible error. However, we reiterate the views expressed in *Morgan v. Commonwealth* that any reference to a polygraph examination is inappropriate.

## IV. RECUSAL

Appellant next contends that the trial court's failure to disqualify the Office of the Jefferson County Commonwealth's Attorney violated due process and KRS 15.733(2)(e). The facts supporting this claim are that in 1989, Mr. John Stewart represented appellant in an *Alford* guilty plea to unrelated charges of criminal facilitation to commit robbery and murder. The conviction was reversed on appeal. Upon retrial, a special prosecutor was appointed as Mr. Stewart had

by then become employed as an Assistant Commonwealth's Attorney. Thereafter appellant's 1989 retrial conviction was used in the instant persistent felony offender proceeding. Appellant contends that the Commonwealth's Attorney's office should have been disqualified from prosecution of the instant case.

■ By virtue of KRS 15.733(2)(e), a prosecutor is disqualified if he "has served in private practice or government service, other than as a prosecuting attorney, as a lawyer or rendered a legal opinion in the matter in controversy." The disqualification upon retrial was proper as appellant's former counsel, Mr. Stewart, had become associated with the Commonwealth's Attorney's office between the time of appeal and retrial. In the present case, however, there was no personal and substantial relationship between Stewart's representation during appellant's first case and the trial of this case. Stewart had no connection with the conviction used for enhancement in this case. Not only is there no substantive need for disqualification, this case presents no appearance of impropriety. As such, we affirm the Jefferson Circuit Court on this issue.

Appellant has made other claims of error, each of which has been reviewed and found to be without merit or unlikely to recur upon retrial. Appellant's conviction is reversed and remanded to the Jefferson Circuit Court for further consistent proceedings.

STEPHENS, C.J., and LEIBSON and STUMBO, JJ., concur.

REYNOLDS, J., concurs in result only.

WINTERSHEIMER, J., dissents by separate opinion in which SPAIN, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because I do not believe it was reversible or prejudicial error to allow witnesses to testify about the course of the criminal investigation.

At trial, Brown objected to the introduction of the evidence of the two anonymous phone calls on the basis of hearsay. The

trial judge then admonished the jury as to both calls, that the answers were not admitted for the truth of the statements but only to show what occurred because of them.

In reviewing the record it should be understood that the police investigation centered on the concern that the robbery and kidnapping was an inside job. Therefore the information received from the first telephone call would tend to confirm this suspicion because the caller knew the family situation of the victim. The second call was relative to the investigation because its receipt and the identification of Brown formed the basis for the confession by co-defendant King.

Co-defendant King confessed to the police that Brown had told him he was the robber. Prior to the anonymous telephone call, King had not been questioned. When he was later interviewed, King first denied knowing Brown or having any knowledge of the robbery. Later, after police told King that they knew Brown was involved, King admitted that he and Brown were cousins and that Brown had admitted to him that he had committed the robbery. After the King confession, Brown's mother's home was searched with consent and the search produced a stun gun and a jacket and scarf later determined to have been used in the robbery.

My review of the evidence indicates that the admonition by the trial judge was sufficient to cure any possible prejudice to the defendant with respect to the reasons for admitting the evidence pursuant to *Hughes v. Commonwealth*, Ky., 730 S.W.2d 934 (1987) and *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 at 541 (1988).

Upon a consideration of the entire case, I do not believe there was any substantial possibility that the result would have been any different, and consequently, the alleged irregularity was not prejudicial. RCr 9.24; *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969).

Here, the introduction of the evidence was harmless. Brown had been connected to the crime not just by the telephone calls but by his admission to his cousin King. He was also found to be in possession of the jacket and scarf used in the crime as well as a stun gun. The defendant was not prejudiced by the limited introduction of the two telephone calls. The error, if any, was harmless and did not require reversal.

Reliance on *Hughes, supra,* is misplaced because in that case, this Court recognized the possibility of nonprejudicial error in certain cases. This situation is that type of case.

I would affirm the conviction in all respects.

SPAIN, J., joins in this dissent.