RENDERED: NOVEMBER 10, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1038-MR

KACY LEE SIGRIST                                 APPELLANT

|   | APPEAL FROM CALLOWAY CIRCUIT COURT |
|---|---|
| v. | HONORABLE JAMES T. JAMESON, JUDGE |
|   | ACTION NO. 19-CR-00180 |

COMMONWEALTH OF KENTUCKY                      APPELLEE

OPINION
AFFIRMING IN PART AND
REVERSING AND VACATING IN PART

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

CLAYTON, CHIEF JUDGE: Kacy Lee Sigrist appeals from a Calloway Circuit

Court judgment after a jury found him guilty of one count of first-degree

possession of a controlled substance, one count of first-degree promoting

contraband, and one count of being a first-degree persistent felony offender ("PFO

I"). Having reviewed the record and applicable law, we reverse the conviction for possession of methamphetamine and vacate the three-year sentence for that charge. The judgment is affirmed in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Sigrist's convictions stem from an incident which occurred while he was incarcerated at the Calloway County Jail. Sigrist was housed in a cell with seven other inmates. At around 3:20 a.m., three deputy jailers, Josh Lovett, Slade McCuiston, and Brandy Cashion, entered the cell to conduct a search for contraband. Most of the inmates were awake, playing cards or chess, watching TV, or talking. The deputies ordered the men to stand up and be escorted out of the cell before the search. One of the inmates, who apparently did not hear the deputies' orders because he was wearing earplugs, went into the bathroom. He was handcuffed by McCuiston, who decided to take him to the booking room for a more thorough search. Deputy Cashion, a female, was not permitted to pat down the remaining inmates so Deputy Lovett had to perform this task by himself. After Lovett had patted down two of the men, Deputy Cashion left to change places with a male deputy who could come down and assist him. Meanwhile, Lovett was left alone with the five remaining men. He directed them to go from the hallway immediately outside the cell through a door into the main hallway. The first inmate to walk through the doorway was Joseph Ben Hendrick. Deputy Lovett

testified that Hendrick did not drop anything. Sigrist was the second of the men to go through. Lovett testified that as Sigrist walked past him through the doorway, he removed a small object resembling a note from his waistband, dropped it on the floor, threw his hands in the air and said, "This is bulls**t. Why are we being searched?" Sigrist also kicked his feet in an apparent attempt to move the object. Lovett did not immediately retrieve the object because he was the only deputy in the area and the object did not appear to be dangerous. Deputy McCuiston eventually picked up the object. It was a piece of lined white note paper wrapped around a clear plastic bag containing methamphetamine. The note paper had a commissary list handwritten on it. Deputy McCuiston testified that the handwriting resembled Sigrist's.

The defense claimed that the inmate Hendrick, who walked through the doorway immediately before Sigrist, dropped the contraband. Because Hendrick had been incarcerated at the jail for only four days before the search, whereas Sigrist had been an inmate there for months, the defense argued it was far more likely that Hendrick would have possessed the contraband.

A key piece of evidence at trial was the video surveillance tape of the hallway immediately outside the cell and the doorway into the hall beyond. Defense investigator Cary Grey analyzed the video with computer assistance and created enlarged still photographs showing the area during the period the inmates

were being removed from the cell hallway and the object was dropped. The

photographs showed a small dark spot on the hallway floor after Hendrick passed

through the doorway. The defense argued that this object was actually the note

containing the methamphetamine.

The jury convicted Sigrist of first-degree possession of a controlled

substance, first-degree promoting contraband, and PFO I. He received sentences

of three years for the possession charge and five years for the promoting charge,

enhanced to ten years by the PFO I. In accordance with the recommendation of the

jury, the trial court ordered the sentences to be run consecutively for a total of

thirteen years. This appeal followed. Additional facts will be set forth below as

necessary.

## ANALYSIS

**1. Whether the convictions for first-degree possession and first-degree
promoting contraband violated the prohibition against double jeopardy**

Sigrist argues that his convictions for first-degree possession of a

controlled substance and first-degree promoting contraband violate the prohibition

against double jeopardy because both charges were predicated on the same

quantity of methamphetamine recovered from the jail floor. "When a single course

of conduct of a defendant may establish the commission of more than one (1)

offense, he may be prosecuted for each such offense. He may not, however, be

convicted of more than one (1) offense when: . . . [o]ne offense is included in the

other[.]" Kentucky Revised Statutes (KRS) 505.020(1)(a). "An offense is so included when: . . . [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" KRS 505.020(2)(a). The possession of a controlled substance count required the proof of no additional facts beyond those required to prove the charge of promoting contraband.

The Commonwealth has conceded that Sigrist's argument is correct in light of clear precedent, most recently set forth in *Collins v. Commonwealth*, 640 S.W.3d 55 (Ky. App. 2021), *discretionary review denied* (Mar. 16, 2022). In *Collins*, the Court held that the appellant's convictions for first-degree promoting contraband and first-degree possession of a controlled substance violated double jeopardy "because both crimes did not require proof of an additional fact that the other did not." *Id.* at 59 (citing *Stewart v. Commonwealth*, 306 S.W.3d 502, 505 (Ky. 2010) ("Possession of a controlled substance does not require proof of an additional fact that promoting contraband does.")).

"[T]he remedy for this type of statutory double jeopardy violation is to vacate the lesser conviction, and only allow sentencing on the greater conviction." *Collins*, 640 S.W.3d at 59 (quoting *Taylor v. Commonwealth*, 611 S.W.3d 730, 739-40 (Ky. 2020)).

In light of the statute and controlling precedent, as well as the Commonwealth's concession, Sigrist's conviction on the lesser charge of possession of a controlled substance must be reversed and the three-year sentence which he received for that charge must be vacated.

**2. Whether the trial court improperly assumed the role of the prosecutor in questioning witnesses**

Next, Sigrist argues that the trial court improperly assumed the role of the prosecutor when it questioned two witnesses. This alleged error is unpreserved and Sigrist requests palpable error review pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.26. "Under RCr 10.26, an unpreserved error may generally be noticed on appeal *if* the error is 'palpable' and *if* it 'affects the substantial rights of a party.'" *Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013). An error is palpable when it is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (citation omitted). "Even then, relief is appropriate only 'upon a determination that manifest injustice resulted from the error.'" *Martin*, 409 S.W.3d at 344 (quoting RCr 10.26). "[W]hat it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial." *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003) (citation omitted).

As we have already outlined, Sigrist's defense was that his fellow inmate, Hendrick, dropped the note containing the methamphetamine. Cary Gray's photographs showed that there was nothing on the outer hallway floor before Hendrick entered the doorway. Two seconds later, after Hendrick had walked through the door, an object appeared on the floor under his heel. Later, after all the men had passed through the doorway, the photographs showed the object had disappeared.

Following Gray's testimony, the Commonwealth recalled Deputy Lovett to testify in rebuttal. Lovett repeated his earlier testimony that Hendrick did not drop anything. He agreed that a small black dot appeared on Gray's still photo of the floor and had disappeared in her next photo. He described the dot as shadowy grey to black, whereas the note containing the methamphetamine was white. He also testified that the object in the photo was not "anywhere near" where the note was recovered. He testified that the dark spot was to the right of the hallway whereas the note was found to the left. He opined that the black spot was probably a smudge or some trash. He testified that he had no doubt he saw Sigrist drop the note.

The trial judge then proceeded to question Lovett. He held up the photograph of the hallway to the jury and asked Lovett to clarify where he saw "whatever it was," referring to the dark spot which the defense argued was dropped

by Hendrick, and then pointed to the area where the note was found, "a few feet from there."

During the penalty phase of the trial, the trial judge questioned a probation and parole officer, Shannon Farley, who testified about the penalty ranges for the charged offenses, parole eligibility, and how the length of a sentence may be reduced by presentence credit, meritorious good time, statutory good time, and program completion credit. The judge inquired, "[I]f someone is sentenced to a year, and they serve that year out, how much time will they serve, close?" The officer replied that it would be a question for offender records. The judge continued, "Yeah, worst case scenario, say no credits, none of that, what is a one-year serve out?" The officer replied that "the colloquial wisdom is that nine months kills an institutional year." The judge then remarked to the prosecutor, "I didn't remember if you covered it or not, and I thought that was important for everybody to know." The prosecutor agreed and directed some follow-up questions to Farley, stating, "If you get a year on a felony sentence, nine months usually is what you serve," to which the officer agreed. The prosecutor then asked, "So if someone receives say a five- or ten-year sentence, even if they don't make parole and serve out, they're not going to serve the full ten years, are they?" The officer replied, "No." "They're going to get some credit off their sentence?" "Yes."

A trial court is permitted to interrogate witnesses under Kentucky Rules of Evidence (KRE) 614(b). This power is to be used "sparingly and always with sensitivity to the potential for unfairness to the litigants." *Terry v. Commonwealth*, 153 S.W.3d 794, 802 (Ky. 2005), *superseded by statute on other grounds as recognized by Gaither v. Commonwealth*, 521 S.W.3d 199 (Ky. 2017) (quoting KRE 614(b) Drafters' Commentary (1989)). The judge cannot "by the form of his question or his manner indicate to the jury his opinion as to the credibility of the witness being interrogated or the guilt or innocence of the accused." *Terry*, 153 S.W.3d at 802 (citation omitted). "[A] judge should not express his opinion about the veracity of a witness through the nature of his questioning, especially through leading questions." *Id.* at 802-03 (citation omitted). And "a trial judge cannot ask questions that place him in the role of a prosecutor rather than an arbiter." *Id.* at 803 (internal quotation marks and citation omitted).

Three factors determine whether a trial judge has good reason to inject himself into the trial:

> First, in a lengthy, complex trial, judicial intervention is often necessary for clarification. Second, if the attorneys in a case are unprepared or obstreperous or if the facts are becoming muddled and neither side is succeeding at attempts to clear them up, judicial intervention may be necessary for clarification. Third, *if a witness is difficult*, if a witness' testimony is unbelievable and counsel fails to adequately probe, or if the witness

becomes inadvertently confused, judicial intervention may be needed.

*Id*. (quoting *United States v. Slone*, 833 F.2d 595, 597 (6th Cir. 1987)).

In the first instance, when the trial judge questioned Deputy Lovett about the defense photographs, he was seeking to clarify where the two objects at issue were located in the hallway. In his direct testimony, Lovett had indicated on the video screen the location where the note landed, and he testified that it was on the right side looking down the hallway from the angle indicated by the Commonwealth. The video record of the trial does not show where Lovett is pointing. The trial court's questions appear directed to clearing up any confusion that may have been caused by viewing the scene from the different angles recorded by the surveillance cameras. In that regard, the trial court's questions were justified.

On the other hand, the trial court's references to "whatever it was" to describe the object which the defense claimed to be the note are more problematic, as the term could imply the trial court had decided that the dark spot was not the note containing the contraband. In that sense, the trial court's questions veered from those of an impartial arbiter. But "[a] palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings." *Brewer*, 206 S.W.3d at 349. The jury was required to resolve a well-defined factual dispute based on the video surveillance footage and the

-10-

testimony of Lovett and Gray. In light of the evidence in the record, it is unlikely that the trial court's choice of words in questioning Lovett would have affected the jury's decision regarding which of the objects was the methamphetamine and by whom it was dropped. The allegedly improper questioning does not rise to the level of reversible, palpable error.

In the penalty phase, the trial court's questioning of the probation and parole officer informed the jury that the defendant would not in reality serve the full sentence the jury chose to impose. The judge's questions did not serve to clarify the officer's testimony because a defendant would serve nine months of a one-year sentence only if the defendant received statutory good time credit, which is not automatic. *See* KRS 197.045(1). "The use of incorrect, or false, testimony by the prosecution is a violation of due process when the testimony is material." *Robinson v. Commonwealth*, 181 S.W.3d 30, 38 (Ky. 2005), *as modified on denial of reh'g* (Jan. 19, 2006). "When the prosecution knows or should have known that the testimony is false, the test for materiality is whether there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id*. (internal quotation marks and citation omitted).

Under the PFO statute, Sigrist would serve a minimum sentence of ten years on the charge of promoting contraband, regardless of the underlying sentence imposed by the jury. KRS 532.080(6)(b) provides that "[i]f the offense for which

he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years." The jury imposed the lowest possible sentence for a PFO I convicted of a Class D felony. Any error in Farley's testimony was not material.

To find reversible, palpable error, "an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different." *Commonwealth v. McIntosh*, 646 S.W.2d 43, 45 (Ky. 1983). The testimony elicited by the trial court's questions did not create a "substantial possibility that the result [of the sentencing phase] would have been any different[.]" *Schoenbachler*, 95 S.W.3d at 836.

The trial court's questioning of Lovett and Farley did not constitute palpable error.

### 3. Whether the trial court abused its discretion in allowing Deputy Lovett to testify that Sigrist acted as other inmates do when disposing of contraband

As outlined above, Deputy Lovett testified that when Sigrist passed through the doorway he removed something from his waistband, dropped it on the floor, threw his hands up and said, "This is bulls**t. Why are we being searched?" and kicked his feet. The jail surveillance video, which does not have any audio, shows Sigrist making a hand gesture as he walks through the door.

-12-

On direct examination, the Commonwealth attorney asked Lovett why he believed Sigrist threw up his hands. He replied that it was to distract him. Defense counsel objected. The Commonwealth attorney asked Lovett whether, in his experience of numerous cell searches, inmates will attempt to distract the guards. The defense objected again. The trial court ruled that the question was leading and sustained the objection. The defense further objected on the grounds that Lovett was trying to establish what Sigrist did by comparing him to other inmates. The trial court stated that the subject was fine.

The Commonwealth then asked Lovett whether he had encountered inmates in the past who attempted to distract deputy jailers when getting rid of contraband. Lovett replied that he had. The Commonwealth attorney then asked what some of the things were that they did to distract. Lovett testified that "they will talk off subject, they will make erratic movements to get you to focus on something other than what they are doing. They will act erratic, they will, let's say [during] the booking process where most contraband is dropped, they'll scream, they'll holler, they'll be very discreet and try to drop it out of anything that is on their possession. Turning their back to you, anything is in motion to try to get rid of what they have." When the Commonwealth attorney asked, "So you've had inmates make unnecessary hand movements to try and create a distraction?" Lovett replied, "Yes, yes. In multiple situations."

-13-

"We review a trial court's rulings on evidentiary issues for an abuse of discretion. The test for abuse of discretion is whether the court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Carson v. Commonwealth*, 621 S.W.3d 443, 446 (Ky. 2021) (citations omitted).

Under KRE 701, a lay or non-expert witness "may provide opinion testimony only if their opinion is (1) based on their perception; (2) helpful to a clear understanding of the witness' testimony or the determination of a fact at issue; and (3) not based on scientific, technical, or specialized knowledge." *Carson*, 621 S.W.3d at 446. Specifically in regard to law enforcement officers, the Kentucky Supreme Court has stated they "may provide lay opinion testimony as to their experience-based interpretations of certain facts which they personally observed." *Id.* at 447. Thus, the Supreme Court "has permitted law enforcement officers to testify as to their interpretation of drug-sniffing dogs behavior; that a juice bottle appeared to be a homemade silencer; and that a suspect appeared intoxicated due to his performance on a field sobriety test. But when the subject matter of the officer's opinion is either not based on personal knowledge or based on specialized knowledge, the trial court must first qualify the officer as an expert." *Id.* (footnotes and citations omitted).

Lovett's testimony falls squarely within this type of lay testimony, as

it was an experience-based interpretation of facts he had personally observed and was not based on scientific or specialized knowledge.

Sigrist nonetheless argues that Lovett's testimony violated his due process right to a fair trial, in reliance on *Johnson v. Commonwealth*, 885 S.W.2d 951 (Ky. 1994). In that case, the defendant was accused of driving a coal truck through a red light, killing another driver. During his examination of the defendant, the prosecutor observed that "[s]ome people, who drive these coal trucks make it a practice to run red lights[,]" and then asked, "Isn't it a fact that that's what you were doing on that particular day?" *Id*. at 953. This question was held impermissible under KRE 404(b), for if a defendant cannot be accused of acting in conformity with his prior bad acts, he also cannot be accused of acting in conformity with a class of people to whom he belongs. *Id*. Sigrist's case is distinguishable, however, because the deputy was testifying based on his personal experience and observation of inmates, from which he concluded that Sigrist was trying to distract him. In *Johnson*, the Commonwealth attorney in effect testified about the alleged practice of coal trucks running red lights, with no evidentiary foundation whatsoever, and then accused the defendant of engaging in this practice.

The trial court did not abuse its discretion in allowing Lovett to testify about his personal observation of inmate behavior and to draw conclusions about Sigrist's actions based on those personal experiences.

**4. Whether the trial court erred in allowing Deputy McCuiston to testify that Sigrist's handwriting matched that on the note enclosing the methamphetamine**

This issue is preserved by objection and will be reviewed for an abuse of discretion. Deputy McCuiston testified that the methamphetamine was wrapped in what appeared to be a handwritten commissary shopping list and that he was familiar with Sigrist's handwriting. The defense objected on the grounds that the witness was not qualified to identify the handwriting. The trial court sent the jury out and told the prosecution it needed to lay a foundation. McCuiston thereafter testified, outside the presence of the jury, that he was familiar with Sigrist's handwriting because Sigrist had sent him several handwritten notes during his time in jail. The Commonwealth attorney gave McCuiston two letters Sigrist had written to him about the case at bar. McCuiston stated that they were signed by Sigrist and appeared to be in his handwriting. He testified that he was not a handwriting expert and had no training on handwriting identification. The trial court examined the two letters and observed that the handwriting was not even consistent between the two. Ultimately the parties agreed that one of the letters

-16-

would be introduced into evidence, with some irrelevant comments redacted. The jury was called back to the courtroom.

McCuiston testified that Sigrist had been an inmate for several months, that he had received twelve letters directly from Sigrist and many more letters from him indirectly. He testified that he recognized the handwriting in the letter and that it was consistent with Sigrist's handwriting. The defense stated that it was not objecting to the admission of the letter but wanted an admonition. McCuiston was shown a photograph of the commissary shopping list that was wrapped around the methamphetamine and testified that the handwriting was consistent with the letter and with other notes of Sigrist's he had seen in the past. He said it appeared to be Sigrist's handwriting. The trial court gave the jury the following admonition:

> I'd just like to remind you that the jury itself must alone decide the credibility of the evidence, its weight, its value, and its sufficiency. The deputy with regard to the identity of the handwriting is testifying as a lay witness, not an expert, so for you to take as you see fit.

In his closing arguments, the Commonwealth attorney stated that "McCuiston's familiar with what his [Sigrist's] handwriting looks like and he testified that the handwriting on the note the methamphetamine was wrapped up in and that Deputy Lovett watched Kacy Sigrist drop is Kacy Sigrist's handwriting. He recognizes it was his handwriting."

Under KRE 701, "Kentucky caselaw has . . . recognized the propriety of admitting such lay witness testimony [about handwriting] when the lay witness is very familiar with the signatory's handwriting, and the testimony would be helpful to the jury." *Roach v. Commonwealth*, 313 S.W.3d 101, 107 (Ky. 2010). In *Hampton v. Commonwealth*, 133 S.W.3d 438 (Ky. 2004), for example, a bank manager was allowed to testify, based on her personal observation, that a signature on a loan document did not resemble the signature of the victim on his driver's license. *Id.* at 440-41. In *Roach*, a police detective was permitted to opine that the signatures on certain checks were likely the victim's. *Roach*, 313 S.W.3d at 107. In these cases, testimony that handwriting on two documents purportedly by the same person was dissimilar was allowed, but the witnesses did not directly opine that the documents were forged.

Sigrist argues that the Commonwealth went farther in his case because McCuiston testified that the writing on the letter he received from Sigrist was consistent with the note. If a witness may testify that handwriting on documents is dissimilar, a witness may also certainly be permitted to testify that the handwriting on two documents is similar. Sigrist urges us to reconsider allowing lay witnesses to make handwriting comparisons at all, but we are bound by the precedent set forth by the Kentucky Supreme Court. "[A]s an intermediate appellate court, this

-18-

Court is bound by established precedents of the Kentucky Supreme Court. SCR[1] 1.030(8)(a). The Court of Appeals cannot overrule the established precedent set by the Supreme Court or its predecessor court." *Smith v. Vilvarajah*, 57 S.W.3d 839, 841 (Ky. App. 2000).

The admission of McCuiston's testimony was not an abuse of discretion, particularly in light of the trial court's admonition to the jury that he was not a handwriting expert.

### 5. Whether the prosecutor should have been disqualified because he previously represented Sigrist in one of the convictions underlying the PFO charge

This allegation of error is partially preserved by Sigrist's *pro se* verbal request for the prosecutor to be removed. To the extent it is unpreserved, Sigrist requests palpable error review. At a pre-trial hearing, Sigrist requested the removal of the prosecutor James Burkeen from his case, stating that he believed Burkeen had a conflict of interest because he had represented him in another case. Sigrist accused Burkeen of being unethical and "shooting him down." Sigrist's counsel stated that she did not believe it was a conflict of interest and told Sigrist that such a conflict would exist only if Burkeen "knows such personal knowledge of your past record . . . he does bring up your past record, but that's what

---

[1] Rules of the Supreme Court.

prosecutors do. He's bringing up what you've been charged with and what you've been convicted of in the past which is not unethical for him to do."

The trial court denied the motion to remove Burkeen, stating, "He is in the same status ethically as I would be. If this was a case that I had represented you on, then I couldn't be the judge on it. If this was a case Mr. Burkeen had represented you on, he could not be the prosecutor on it. But these are new cases. So, unless he has some sort of information that he would only have because he was your lawyer about these particular cases . . . his job is to prosecute you and put you in jail. Now that's why you have a neutral party in the judge, okay? Somebody who can sort out the difference between the defendant and the prosecutor."

Burkeen represented Sigrist in one of the two prior cases which were used to support the charge of PFO I. The case involved an *Alford*[2] plea of guilty to theft by unlawful taking. The final judgment, which was entered into evidence as an exhibit for the Commonwealth, states in part that Sigrist appeared in open court on June 2, 2008, with his attorney, James Burkeen, to enter the plea. This document was made available to the jury in its deliberations during the penalty phase.

Sigrist argues that it would have been highly prejudicial for the jury to discover that the prosecutor on the case they were hearing had actually represented

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

him in the past and was now using that conviction to send him to prison for a lengthy sentence. He contends that it is entirely possible for the jury to conclude that Burkeen knew Sigrist was a particularly bad individual from his prior representation of him and that this explained why he was now "throwing the book" at him.

A prosecuting attorney is required to disqualify himself "in any proceeding in which he . . . [h]as served in private practice or government service, other than as a prosecuting attorney, as a lawyer or rendered a legal opinion in the matter in controversy[.]" KRS 15.733. The issue is whether a prosecutor should be disqualified if, like Burkeen, he served as the defense attorney in the conviction used to support the current PFO charge. In *Brown v. Commonwealth*, 892 S.W.2d 289 (Ky. 1995), the defendant Brown was represented by attorney John Stewart in entering an *Alford* plea to several charges. The conviction was reversed on appeal and Brown was retried. A special prosecutor was appointed for those retrial proceedings because, in the meantime, Stewart had gone to work at the prosecutor's office. Brown was convicted in the retrial. That conviction was subsequently used to support a charge of PFO in subsequent proceedings. Brown sought to disqualify the entire Jefferson County Commonwealth Attorney's office. The Kentucky Supreme Court held that "[t]he disqualification upon retrial was proper as appellant's former counsel, Mr. Stewart, had become associated with the

Commonwealth's Attorney's office between the time of appeal and retrial." *Id.* at 291. "In the present case, however, there was no personal and substantial relationship between Stewart's representation during appellant's first case and the trial of this case. Stewart had no connection with the conviction used for enhancement in this case. Not only is there no substantive need for disqualification, this case presents no appearance of impropriety." *Id.* Sigrist argues that by contrast, there was a direct connection between Burkeen, and the conviction used for the enhancement in this case, in that Burkeen directly represented him in those proceedings.

The Commonwealth argues that the trial court did not abuse its discretion in refusing to disqualify Burkeen in reliance on *Cole v. Commonwealth*, 553 S.W.2d 468 (Ky. 1977), which states as a general principle that "[a] prosecuting attorney is disqualified from acting in a criminal case only if he has previously represented or been consulted professionally by the accused with respect to the same offense charged or in matters so closely interwoven as to be in effect a part thereof." *Id.* at 472. In *Cole*, the prosecutor had represented the defendant many years before. The Kentucky Supreme Court held that he did not have to be disqualified because he "acquired no confidential information when he defended Cole 29 years previous to this trial which he could have used in the case at bar. The existence of the prior conviction of Cole for the habitual criminal

-22-

offense was established by the testimony of the clerk of the Logan Circuit Court. It was a matter of public record. Thus, there was no conflict of interest so as to disqualify the Commonwealth's Attorney." *Id.*

There is no allegation here that Burkeen had information about Sigrist that he could use against him at trial. The issue is whether Burkeen's name appearing on the judgment underlying the PFO charge could have improperly influenced the jury during the penalty phase. If it influenced the jury to recommend his sentences to run consecutively rather than concurrently, any prejudice has been erased because the conviction for possession has been reversed and that sentence vacated. The sentence for the other charge was enhanced by the PFO I to ten years, the lowest possible sentence. Therefore, even if any prejudice resulted from Burkeen's name appearing on the judgment, it had no effect on the final sentence and certainly did not rise to the level of palpable error.

## 6. Whether the trial court erred in allowing Sigrist to appear in an orange jumpsuit and ankle shackles during the penalty phase of the trial

After the jury returned its verdict finding Sigrist guilty of charges of possession of contraband and promoting contraband, the trial court ordered him to be taken into custody, based on its stated fear that Sigrist might commit a new crime, get high, or flee because he was facing a lengthy sentence. The next day, at the commencement of the penalty phase of the trial, Sigrist arrived in court dressed in an orange jail jumpsuit with his hands and feet shackled. Defense counsel

requested that he be unchained.  The trial court stated that it would prefer him to be unchained, at least at the hands.  Sigrist's hands were unchained, but he wore the jumpsuit and had his feet shackled throughout the penalty phase.  To the extent the issue is unpreserved, Sigrist requests palpable error review.

"Except for good cause shown the judge shall not permit the defendant to be seen by the jury in shackles or other devices for physical restraint." RCr 8.28(5).  And, "a trial court that compels a criminal defendant to appear before the jury in prison clothing threatens the defendant's fundamental right to a fair trial." *Deal v. Commonwealth*, 607 S.W.3d 652, 658 (Ky. 2020) (citing *Estelle v. Williams*, 425 U.S. 501, 504-05, 96 S. Ct. 1691, 1693, 48 L. Ed. 2d 126 (1976)).

The jury was aware that Sigrist had been imprisoned in the past.  The crime for which he was being tried occurred while Sigrist was incarcerated and a key piece of evidence at trial was the video surveillance tape of the jail, in which Sigrist appeared in prison garb.  The jury had already found Sigrist guilty of two charges when he appeared in prison garb and the ankle shackles at the penalty phase.  Although we recognize that a defendant is entitled to due process protections throughout the trial, *Barbour v. Commonwealth*, 204 S.W.3d 606, 610-11 (Ky. 2006), any material prejudice stemming from his appearance at the penalty phase is difficult to discern and does not rise to the level of manifest injustice necessitating reversal.

# CONCLUSION

Sigrist's conviction for possession of contraband in the first degree is reversed and the three-year sentence imposed for that charge is vacated. The remainder of the Calloway Circuit Court's judgment and sentence are affirmed in full.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky